No. 22-20095

_____

## United States Court of Appeals
## For the Fifth Circuit

_____

JOSE FLORES; JEAN ROMERO-RODRIGUEZ; BRANDON VILLARREAL,

*Plaintiffs-Appellants*,

v.

FS BLINDS, L.L.C.,

*Defendant-Appellee.*

On Appeal from the United States District Court
For the Southern District of Texas Houston Division

## Brief of Appellee FS Blinds, LLC

Stephen H. Lee
Kelly R. Ferrell
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6686 – telephone
(713) 226-6386 – facsimile

**Attorneys for FS Blinds, LLC**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

No. 22-20095

*Jose Flores; Jean Romero-Rodriguez; Brandon Villarreal,*

*v.*

*FS Blinds, LLC*

The undersigned counsel of record certifies that the following listed persons and entities as described in Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. FS Blinds, LLC, Appellee;

2. Stephen H. Lee and Kelly R. Ferrell, PORTER HEDGES LLP, Counsel for FS Blinds, LLC;

3. Jose Flores, Jean Romero-Rodriguez, and Brandon Villarreal, Appellants; and

4. Andrew S. Golub and Lauren Van Ness, DOW GOLUB REMELS & GILBREATH, PLLC.

*/s/ Stephen H. Lee*

Stephen H. Lee

***Attorney of record for FS Blinds, LLC***

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellee FS Blinds LLC, respectfully submits that the issues raised in this appeal do not warrant oral argument.  This case does not involve complex issues of fact or law.  The undisputed facts are adequately presented in the record on appeal, and the controlling legal principles are well-established under Fifth Circuit precedent.  However, to the extent the Court determines that its decisional process would be aided by oral argument, FS Blinds LLC would welcome the opportunity to present its position.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................. ii

TABLE OF AUTHORITIES ................................................ vi

ISSUES PRESENTED FOR REVIEW ................................................. 1

STATEMENT OF THE CASE .................................................. 1

    A.    Course of Proceedings and Disposition Below. ................... 1

    B.    Statement of Facts .......................................................... 3

        1.    FS Blinds engaged Appellants as independent contractors ....... 4

        2.    Appellants worked on a job-by-job basis with discretion over their schedules .................................................. 5

        3.    Appellants completed their work without oversight from FS Blinds .................................................................. 6

        4.    Appellants provided their own tools, equipment, and transportation ............................................................ 7

        5.    Appellants hired their own workers ........................... 7

        6.    Appellants were incentivized to complete more jobs to increase their profits ................................................... 8

        7.    Appellants claimed they were sole proprietors and took tax deductions for business expenses ........................ 9

        8.    Flores purchased blinds for unrelated jobs ............... 10

        9.    It was impossible to have worked the amount of overtime Appellants claim ...................................................... 10

STANDARD OF REVIEW ................................................... 11

SUMMARY OF THE ARGUMENT ..................................... 12

ARGUMENT ......................................................................... 15

    A.    The District Court Properly Held that Appellants' Evidence Could Not Create a "Just and Reasonable Inference" of Overtime Worke .......................................................... 15

        1.    Appellants' unsubstantiated declarations alone are not enough to satisfy the *Mt. Clemens* standard ............... 16

             *a.*     *Appellants' declarations are contradicted by their prior sworn deposition testimony* ...................................17

             *b.*     *Unsubstantiated assertions are no evidence under long-standing Fifth Circuit precedent* ............................22

             *c.*     *Appellants' cases are inapposite.* ...................................25

    2.     Evidence manufactured by Appellants' attorney does not satisfy *Mt. Clemens.* ...................................................................30

             *a.*     *Unverified, admittedly inaccurate, speculative, and attorney-created evidence are inadmissible to support Appellants' claims* ............................................30

             *b.*     *This Court in Kirk rejected reliance on similarly deficient evidence* ............................................................34

    3.     The District Court properly rejected Appellants' "average" workweek when Appellants admitted they did not work the hours claimed .......................................................36

B.    The District Court Properly Denied Appellants' Motion on the Issue of Damages, because Appellants Failed to Satisfy Their Threshold Burden of Proof.....................................................................38

C.    Appellants Were Independent Contractors under the Economic Realities Test ........................................................................................39

    1.     FS Blinds did not control Appellants' work ............................40

             *a.*     *Appellants worked without supervision and instruction* ...................................................................40

             *b.*     *FS Blinds did not control Appellants' schedules* ............40

             *c.*     *FS Blinds' customers evaluated Appellants' work* .........43

             *d.*     *Additional control facts in favor of IC status* .................44

    2.     Appellants made substantial investments .................................44

    3.     Appellants controlled their profits and losses...........................48

    4.     Appellants showed initiative......................................................49

    5.     Appellants worked on a project-by-project and short term basis..............................................................................................49

    6.     Appellants' reliance on a non-traditional factor is unavailing.......................................................................................51

        *a.*    *Consideration of the "Integral to the Business"*
               *factor is not supported* ...................................................51

        *b.*    *In the Fifth Circuit, installers are ICs even when*
               *they install the precise product the company sells* .........52

        *c.*    *Additional extraneous factor to be considered, if*
               *any* ...............................................................................53

    7.    FS Blinds is not precluded from arguing each economic
          realities factor ............................................................................54

    8.    Conclusion ...............................................................................56

CONCLUSION ......................................................................................57

CERTIFICATE OF SERVICE ..............................................................59

CERTIFICATE OF COMPLIANCE ......................................................60

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Off Duty Police Servs., Inc.*,
  915 F.3d 1050 (6th Cir. 2019) ..............................................................52

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...........................................................................12

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946).................... 1, 12, 14, 15, 16, 21, 25, 27, 28, 29, 30, 34, 39

*Baker v. Flint Eng'g & Constr. Co.*,
  137 F.3d 1436 (10th Cir. 1998) ...........................................................48

*Beliz v. W.H. McLeod & Sons Packaging Co.*,
  765 F.2d 1317 (5th Cir. 1985) ..............................................................26

*Brennan v. Gen. Motors Acceptance Corp.*,
  482 F.2d 825 (5th Cir. 1973) ................................................................28

*Brock v. Norman's Country Mkt., Inc.*,
  835 F.2d 823 (11th Cir. 1998) ..............................................................28

*Carrell v. Sunland Constr., Inc.*,
  998 F.2d 330 (5th Cir. 1993) .......................................................40, 41, 44, 54, 56

*Castillo v. Givens*,
  704 F.2d 181 (5th Cir. 1983) ................................................................26

*Cleveland v. Policy Management Systems Corp.*,
  526 U.S. 795 (1999)...........................................................................20

*Dixon v. First Choice,* No. 4:14-CV-02895, 2016 WL 774680
  (S.D. Tex. Feb. 29, 2016) ....................................... 12, 19, 25, 26, 30, 43, 49, 54

*Donovan v. DialAmerica Mktg., Inc.*,
  757 F.2d 1376 (3d. Cir. 1985) ..............................................................52

*Donovan v. Hamm's Drive Inn*,
  661 F.2d 316 (5th Cir. 1981) ...........................................................26, 48

*Donovan v. Tehco, Inc.*,
 642 F.2d 141 (5th Cir. 1981) ................................................................48

*Duplan v. Harper*,
 188 F.3d 1195 (10th Cir. 1999) ..........................................................43

*Eberline v. Media Net, L.L.C.*,
 636 F. App'x. 225 (5th Cir. 2016) ....................................... 41, 42, 44, 48, 49, 53

*Fairchild v. All Am. Check Cashing, Inc.*,
 815 F.3d 959 (5th Cir. 2016) ........................................... 3, 11, 14, 22, 23, 24, 27

*Garcia v. U Pull It Auto & Truck Salvage, Inc.*,
 657 Fed. Appx. 293 (5th Cir. 2016)............................................19, 23, 24, 27, 30

*Godert v. Palo Alto Networks, Inc.*,
 3:16-CV-2079-G, 2017 WL 5901003 (N.D. Tex. Nov. 30, 2017)....................25

*Hacienda Records, L.P. v. Ramos*,
 718 F. App'x 223 (5th Cir. 2018) ........................................................32

*Hargrave v. Aim Directional Servs.*,
 No. 21-40496, 2022 WL 1487020 (5th Cir. May 11, 2022) ......14, 41, 48, 49, 50

*Harvill v. Westward Commc'ns, L.L.C.*,
 433 F.3d 428 (5th Cir. 2005) .................................................3, 14, 22, 23, 25, 27

*Herman v. Express Sixty-Minutes Delivery Serv., Inc.*,
 161 F.3d 299 (5th Cir. 1998) ............................................................42, 44, 50, 53

*Hobbs v. EVO Inc.*,
 7 F.4th 241 (5th Cir. 2021) ........................................................21, 42, 43, 47, 51

*Hobbs v. Petroplex Pipe and Constr., Inc.*,
 946 F.3d 824 (5th Cir. 2020) ..........................................................42, 43, 47, 51

*Holaway v. Stratasys, Inc.*,
 771 F.3d 1057 (8th Cir. 2014) ....................................................................29, 30

*Ihegword v. Harris Cnty. Hosp. Dist.*,
 555 F. App'x 372 (5th Cir. 2014) ........................................................14, 23, 27

*Ihegword v. Harris. Cty. Hosp. Dist.*,
    929 F. Supp. 2d 635 (S.D. Tex. 2013) ...............................................27

*Johnson v. Big Lots Stores, Inc.*,
    Nos. 04-3201, 05-6627, 2008 WL 6928161 (E.D. La. May 2, 2008) ...............55

*Kibodeaux v. A&D Interests, Inc.*,
    No. 3:20-CV-00008, 2022 WL 980354 (S.D. Tex. Mar. 31, 2022) ..................25

*United States ex rel King v. Solvay Pharm., Inc.*,
    871 F.3d 318 (5th Cir. 2017) ..............................................................31

*Kirk v. Invesco, Ltd.*,
    700 F. App'x 334 (5th Cir. 2017) ........................... 14, 22, 24, 25, 27, 34, 35, 36

*Kuebel v. Black & Decker, Inc.*,
    643 F.3d 353 (2nd Cir. 2011) ........................................................28, 29

*Lindquist v. City of Pasadena*,
    656 F. Supp. 2d 662 (S.D. Tex. 2009)................................................55

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) .............................................................12

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990).........................................................................12

*Martin v. Circle C Inv., Inc.*,
    No. MO-91-CA-43, 1991 WL 338239 (W.D. Tex. Mar. 27, 1991)..................52

*Martin v. Selker Bros., Inc.*,
    949 F.2d 1286 (3rd Cir. 1991) ...........................................................28

*Martinez v. Bally's La., Inc.*,
    244 F.3d 474 (5th Cir. 2001) ........................................................55, 56

*McLaughlin v. Seafood, Inc.*
    867 F.2d 875 (5th Cir. 1989) .............................................................47

*Mitchell v. Riley*,
    296 F.2d 614 (5th Cir. 1961) ........................................................26, 51

*Mitchell v. Strickland Transp. Co.*,
    228 F.2d 124 (5th Cir. 1955) ...............................................................52

*Moran v. Al Basit LLC*,
    788 F.3d 201 (6th Cir. 2015) ...............................................................28

*Mumbower v. Callicot*,
    526 F.2d 1183 (8th Cir. 1975) .............................................................29

*O'Meara-Sterling v. Mitchell*,
    299 F.2d 401 (5th Cir. 1962) ...............................................................26

*Oti v. Green Oaks SSC, LLC*,
    No. 4:13-CV-816-A, 2015 WL 329216 (N.D. Tex. Jan. 23, 2015) .............19, 25

*Parrish v. Premiere Directional Drilling*, *L.P.*,
    917 F.3d 369 (5th Cir. 2019) ............................ 14, 39, 40, 41, 42, 43, 47, 48, 49

*Reeves v. Int'l Telephone & Telegraph Corp.*,
    616 F.2d 1342 (5th Cir. 1980) .............................................................26

*Reich v. S. Md. Hospital, Inc.*,
    43 F.3d 949 (4th Cir. 1995) ...............................................................28

*Reich v. S. New England Telecomm. Corp.*,
    121 F.3d 58 (2nd Cir. 1997) ...............................................................28

*Robicheaux v. Radcliff Material, Inc.*,
    697 F.2d 662 (5th Cir. 1983) ...............................................................47

*Rogers v. Bromac Title Servs., LLC*,
    755 F.3d 347 (5th Cir. 2014) ...............................................................12

*Rutherford Food Corp. v. McComb*,
    331 U.S. 722 (1947)...........................................................................47

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
    72 F.3d 489 (5th Cir.1996) .................................................................29

*Sec'y of Labor v. DeSisto*,
    929 F.2d 789 (1st Cir. 1991)...............................................................28

*Shelby v. Boxer,* No. 4:16-CV-1549, 2019 WL 8017865
(S.D. Tex. Sept. 13, 2019) ........................................................14, 20, 21, 37, 38

*Shultz v. Hinojosa*,
432 F.2d 259 (5th Cir. 1970) ................................................................51

*Skipper v. Superior Dairies, Inc.*,
512 F.2d 409 (5th Cir. 1975) ................................................................26

*Talbert v. Am. Risk Ins. Co.*,
405 F. App'x 848 (5th Cir. 2010)...................................................44, 50

*Thibault v. Bellsouth Telecomms, Inc.*,
612 F.3d 843 (5th Cir. 2010) .......................................................40, 41, 47, 48

*Thompson v. Bank of Am. Nat. Ass'n*,
783 F.3d 1022 (5th Cir. 2015) ..............................................................33

*Turner v. Baylor Richardson Med. Ctr.*,
476 F.3d 337 (5th Cir. 2007) ................................................................24

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)..............................................................................28

*U.S. Dep't of Lab. v. Five Star Automatic Fire Protc., L.L.C.*,
987 F.3d 436 (5th Cir. 2021) ..........................................................21, 52

*United States v. Chivers*,
488 F. App'x 782 (5th Cir. 2012)..........................................................31

*United States v. Solvay*,
No. CV H-06-2662, 2016 WL 1258401 (S.D. Tex. Mar. 31, 2016),
*aff'd sub nom*...........................................................................................31

*United States v. Winn*,
948 F.2d 145 (5th Cir. 1991) ................................................................31

*Weinhoffer v. Davie Shoring, Inc.*,
23 F.4th 579 (5th Cir. 2022) ................................................................33

*Wirtz v. Dix Box Co.*,
322 F.2d 499 (9th Cir. 1963) ................................................................29

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 203, et. seq................................................1, 22

**Other Authorities**

FED. R. APP. P. 32(a)(7)(B)(i) ...................................................................60

FED. R. APP. P. 32(f)..............................................................................60

FED. R. CIV. P. 56(c)..............................................................................11

FED. R. CIV. P. 56(e)..............................................................................12

FED. R. EVID. 1006 .....................................................................30, 31, 32

Rules of Prof'l Conduct R. 3.08................................................................31

## <u>STATEMENT OF JURISDICTION</u>

FS Blinds LLC ("FS Blinds" or "Appellee") accepts the jurisdictional statement set forth by Appellants Jose Flores ("Flores"), Jean Romero-Rodriguez ("Romero-Rodriguez"), and Brandon Villarreal ("Villarreal") (collectively, "Appellants").

## ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court, applying the lower standard of proof set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), properly granted summary judgment for FS Blinds on the basis that Appellants lacked *prima facie* evidence of uncompensated overtime because the evidence established that Appellants could not (1) have worked overtime in all of the weeks claimed, (2) explain how they worked overtime in any week claimed, and (3) remember if they worked overtime in every week claimed.

2.      Whether the District Court properly denied Appellants' motion for summary judgment as to liability and damages when Appellants failed to meet their *prima facie* burden.

3.      If this Court decides that summary judgment on Appellants' claims for unpaid overtime was improper, whether the judgment for FS Blinds should be affirmed on the alternative ground raised in FS Blinds' motion for summary judgment denied by the district court that Appellants were independent contractors under the Fifth Circuit's economic realities test.

## STATEMENT OF THE CASE

A.      **Course of Proceedings and Disposition Below.**

This case arises from Plaintiffs-Appellants claims that they were misclassified as independent contractors and denied overtime compensation in violation of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203, et. seq., while working for Defendant-Appellee FS Blinds. ROA.9-17. Appellants claim they worked an average of 70 hours a week for every week they performed work for FS Blinds. ROA.532-36.

Appellants moved for summary judgment as to liability and damages, arguing there was no dispute of material fact that Appellants were employees for purposes of the FLSA and that they worked an average of 70 hours a week. ROA.191-211. FS Blinds filed a competing motion for summary judgment, arguing Appellants were independent contractors, and, alternatively, Appellants could not meet their *prima facie* burden to establish they performed uncompensated overtime work. ROA.423-443.

In support of their overtime claim, Appellants offered post-deposition declarations, the deposition testimony of a FS Blinds manager, and summaries of selective work orders created by Appellants' attorney. ROA.1797-99.

United States District Judge Alfred H. Bennett denied Appellants' motions and granted FS Blinds' motion, and made the following rulings:

1.  Plaintiffs failed to meet their burden of producing sufficient evidence to show the amount and extent of overtime work as a matter of just and reasonable inference.

2.  Plaintiffs failed to offer evidence to create a genuine dispute of material fact as to their overtime worked.

3. A genuine question of material fact existed regarding whether Appellants were independent contractors or employees under the FLSA.

ROA.2143-2148.

The District Court's Order cited to Appellants' deposition admissions, which proved Appellants could not have worked the hours claimed. ROA.2147. Appellants' post-deposition declarations were insufficient to meet their burden under controlling Fifth Circuit precedent, because they were unsubstantiated, conclusory, and directly contradicted by Appellants' deposition admissions. *See Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 965 (5th Cir. 2016); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). Further, the District Court implicitly rejected Appellants' additional evidence—*e.g.*, the inadmissible documents created by Appellants' attorney.

The District Court applied controlling Supreme Court and Fifth Circuit precedent, which lowered Appellants' burden of proof to a "just and reasonable inference" standard due to the lack of employer-maintained time records. ROA.2146. The District Court held that "[e]ven with the lowered burden of proof," Appellants failed to meet their burden. ROA.2147-2148.

## B.     Statement of Facts.

The following undisputed facts are set forth in the record and derived almost exclusively from Appellants' own deposition testimony.

3

## 1.    FS Blinds engaged Appellants as independent contractors.

FS Blinds sells, supplies, and installs window coverings primarily to residential builders for new homes.  ROA.10.  FS Blinds engaged Appellants as independent contractors ("IC"s) to install window coverings (typically, blinds) for FS Blinds' customers.  ROA.491-525.

Appellants signed Independent Subcontractor Agreements (the "IC Agreements") defining the working relationship as that of an IC and disclaiming any inference of an employer-employee relationship.  ROA.491-525.  Each Appellant signed their respective IC Agreement as a "Sole Proprietorship."  ROA.497;  ROA.506;  ROA.525.  Appellants were free to terminate their relationships with FS Blinds at *any time*, with or without cause.  ROA.494;  ROA.503; ROA.521.  The IC Agreements did not prohibit Appellants from working for FS Blinds' competitors.  ROA.491-525.

Flores performed work for FS Blinds from April 15, 2018 through October 6, 2019.  ROA.532-33.  Villarreal's work for FS Blinds spanned from August 5, 2018 through April 5, 2020, with several stretches when he did not work for FS Blinds. ROA.535-36.  Romero-Rodriguez worked for FS Blinds for less than eight months, from March 4, 2019 through October 23, 2019, and did not work for at least one week during that period.  ROA.534.  Appellants sometimes worked less than a five-day workweek.  ROA.467; ROA.570.

### 2.    Appellants worked on a job-by-job basis with discretion over their schedules.

At least one day prior, FS Blinds sent Appellants a schedule with available jobs for the next day.  ROA.546.  FS Blinds assigned Appellants work on a job-by-job basis based on customer requests.  ROA.466; ROA.567.  Appellants understood they were not guaranteed work or that they would be on the schedule on any particular day.  ROA.466; ROA.566.  Appellants could request not to be scheduled, and FS Blinds granted those requests without penalty.  ROA.567-69; ROA.1050.  If the schedule was light, Appellants decided whether to take work.  ROA.452; ROA.712-13 (discussing ROA.632).

Unless the customer requested a certain timeframe, Appellants had discretion to plan their routes, order of jobs, and when to perform the work.  ROA.453-54 (discussing ROA.619); ROA.707-11 (discussing ROA.621).  For example, the schedule might request that a job be completed within a certain timeframe *due to a customer preference*.  ROA.1054-55.  Even then, Appellants had discretion to determine the route, order, and time of the work so long as they met the customer's request.  ROA.1054-55.  On all other occasions, the time slot on Appellants' schedules stated "ANY TIME," granting Appellants discretion to perform the work at *any time* during the day.  ROA.453-54.  Appellants were free to determine when to take breaks and for how long.  ROA.559-60.

After picking-up the blinds at FS Blinds' warehouse, Appellants did not return to FS Blinds until the next time they were scheduled for work. ROA.1046. Once at the job, Appellants were not required to check-in with FS Blinds when they arrived, after they completed a job, or left a job site. ROA.458, 463-64; ROA.552; ROA.714, 717-18.

FS Blinds did not set Appellants' hours or tell them to work overtime. ROA.561-63; ROA.718. Appellants did not always complete the jobs on their daily schedules, choosing instead to carry over work to another day. ROA.564-65; ROA.719. At times, Flores did not complete a job on the schedule, did not inform FS Blinds, and instead communicated with the customer to reschedule. ROA.719-23.

### 3.    Appellants completed their work without oversight from FS Blinds.

When Appellants worked at customer homes, no one from FS Blinds was there. ROA.457-58; ROA.550-51; ROA.714. There was no FS Blinds supervisor overseeing their work, or anyone, for that matter, instructing Appellants on how to complete the job. ROA.462; ROA.558; ROA.716. For this reason, Appellants never received any performance evaluations from FS Blinds. ROA.465; ROA.559. And, FS Blinds did not require Appellants to wear any type of uniform. ROA.458; ROA.552; ROA.715.

**4. Appellants provided their own tools, equipment, and transportation.**

FS Blinds provided window coverings. ROA.455-56, 458-59; ROA.704-05. FS Blinds did not provide anything else. ROA.715. Appellants provided all other materials, tools, and equipment, which included: screws, drills, tool bags, handsaws, box cutters, hammers, toolbars, tape measures, batteries, ladders, chop saws, etc. ROA.459-61; ROA.555-57; ROA.715-16. FS Blinds did not tell Appellants what or how much to purchase. ROA.483.

Appellants also provided their own vehicles to use for their installation work, and were responsible for all related expenses. ROA.455-56; ROA.548-49; ROA.665-66. Appellants used their vehicles to haul the blinds, travel from job to job, and store all of their equipment and tools. ROA.483; ROA.613; ROA.665-66.

**5. Appellants hired their own workers.**

Flores and Villarreal also hired their own helpers. ROA.473; ROA.659-60; ROA.681-83. Appellants' helpers were not employees or contractors of FS Blinds. ROA.476. Rather, Appellants controlled all aspects of those working relationships, and Appellants' helpers were not required to meet any FS Blinds criteria or approval (other than not having felony convictions). ROA.475-76.

Flores and Villarreal determined in their sole discretion how much to pay their helpers, how often the helpers worked, and the type of work they performed. ROA.475-76; ROA.661-62, 680-83. They supervised and instructed their helpers,

and hired/fired them at their discretion.  ROA.474-75; ROA.681-83.  Flores paid his helpers between \$70-\$100/day, and spent \$6,000 in 2018 on his helpers.  ROA.661; ROA.663-64 (discussing ROA.743-44).  Flores' 2019 tax return shows that he deducted \$3,800 in contract labor for that tax year.  ROA.755-56.  Villarreal's tax returns show that he deducted \$2,800 in contract labor in 2018 and \$7,500 in 2019.  ROA.769-70; ROA.782-83.

### 6.    Appellants were incentivized to complete more jobs to increase their profits.

FS Blinds paid Appellants for each set of blinds installed.  ROA.451; ROA.541.  The more installs they completed, the more they were paid.  ROA.543.  The number of jobs assigned to Appellants was based on what they could accomplish and their requests for more work.  ROA.1043-45, 1047-49, 1058-59.  If Appellants could finish more jobs in a day, FS Blinds gave them more work.  ROA.1058-59.  Appellants could increase their profits by working with greater efficiency; incentivizing them to work quickly and request more work.  ROA.451; ROA.542-43.

Because Appellants determined when they worked, and sometimes carried over uncompleted work, Appellants documented when they worked by submitting a subcontractor draw sheet to FS Blinds for payment.  ROA.470-71; ROA.579.

### 7.    Appellants claimed they were sole proprietors and took tax deductions for business expenses.

For each tax year Appellants were engaged by FS Blinds, Appellants submitted to the IRS a Schedule C (entitled, "Profit or Loss From Business (Sole Proprietorship)") with their tax returns.  ROA.743-44; ROA.755-56; ROA.769-70; ROA.782-83; ROA.800-01.  On the Schedule Cs, Appellants listed themselves under "Name of Proprietor," their home address as the business address, and the amount of income they received from FS Blinds that year under "Gross receipts or sales." ROA.477-79; ROA.485-86; ROA.603-07; ROA.634-37, 684.  Appellants deducted business expenses related to their sole proprietorships from their taxable income— resulting in significant deductions.   ROA.673-76; ROA.743-44.[1]   Flores even deducted the business use of his house.  ROA.743; ROA.755.  Appellants paid self-employment tax.  *See* ROA.745.  Additionally, Villarreal and Romero-Rodriguez each took a "Qualified Business Deduction" for each year they performed work for FS Blinds.  ROA.763-64; ROA.777-78; ROA.796-97.

---

[1] In 2018, Flores claimed **$43,435** in expenses related to his proprietorship, reducing his taxable income from $62,866 to $19,431. In 2019, Flores claimed **$48,138**, reducing his taxable income from $71,817 to $23,679.  ROA.701-03; ROA.755-56.  In 2018, Villarreal claimed **$15,381**, reducing his taxable income from $33,131 to $17,750.  ROA.481-82; ROA.769-70.  In 2019, Villarreal claimed **$47,694**, reducing his taxable income from $64,519 to $16,825.  ROA.488-89; ROA.782-83.   In 2019, Romero-Rodriguez claimed **$15,856** in expenses related to his proprietorship, reducing his taxable income from $31,622 to $15,766.  ROA.800-01.

### 8.    Flores purchased blinds for unrelated jobs.

In 2018 and 2019, Flores purchased blinds from FS Blinds to install at jobs for entities or individuals other than FS Blinds' customers.  ROA.643-59 (discussing the invoices in ROA.912-970); ROA.686-700 (discussing the invoices in ROA.912-70).  The invoices for Flores' purchases state an installation date occurring on Monday through Friday—*i.e.,* the same workdays that Flores alleges he was generally scheduled to work for FS Blinds.  ROA.912-70.

### 9.    It was impossible to have worked the amount of overtime Appellants claim.

In his deposition, Romero-Rodriguez admitted that there are weeks for which he is claiming overtime even though it was *impossible* for him to have worked over 40 hours.  ROA.594-96 (discussing ROA.971-80 and admitting it was impossible for him to work over 40 hours when he only worked one day in the week); ROA.580-94 (discussing ROA.981-1003 and calculating 19.8 hours as the maximum hours worked for that workweek).  This is particularly true given the fact that Romero-Rodriguez sometimes worked as few as one to three days in a week.  ROA.580-99.

Romero-Rodriguez admitted that his work hours varied and that he did not always work the same average hours a week.  ROA.573-75.  The number of jobs Romero-Rodriguez completed in a week varied.  ROA.534.  Some weeks he made as little as $180 and other weeks he made over $1600.  ROA.534; ROA.572-75.

Nonetheless, he "guessed" that 70 hours a week was his "best average" of hours worked.  ROA.586-87, 600.

Romero-Rodriguez and Villarreal each admitted they had no way of substantiating or explaining how they worked over 40 hours in any workweek.  ROA.472; ROA.594, 599-600.  When asked if he, in fact, worked over 40 hours in every week, Romero-Rodriguez answered: "I cannot remember."  ROA.576.

Villarreal's compensation each workweek varied significantly, sometimes making only $97.00 a week and others over $2,000.00.  ROA.535-36.  There were workweeks where he only worked one day a week—making it impossible for him to have worked overtime during those weeks.  ROA.1035-41.

Flores alleges that for *all* weeks during the 18-months he worked for FS Blinds he worked an average of 70 hours a week.  ROA.532-33.  Yet, Flores admitted that he worked less than 70 hours sometimes.  ROA.724-25.  The number of jobs Flores completed in a week varied.  ROA.532-33; ROA.723-25.  There were some weeks where he made as little as $510 for the week and others over $2,000.  ROA.532-33.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The mere scintilla of evidence in support of

the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted).

Summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014). A nonmovant cannot avoid summary judgment by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (citing Fed. R. Civ. P. 56(e)).

## SUMMARY OF THE ARGUMENT

<u>First</u>, Appellants' appeal hinges on the admissibility of (1) conclusory declarations that are directly contradicted by Appellants' prior sworn deposition testimony, and (2) purported "summary" charts prepared solely by Appellants' attorney. The District Court properly applied the lowered burden of proof set forth in *Mt. Clemens* and correctly held that this evidence could not create a "just and reasonable inference" of overtime worked. ROA.2145-2148. This Court should affirm.

12

Appellants' prior sworn admissions directly negate their declarations and any inference that they performed the overtime hours claimed.  In the District Court's Order, Judge Bennett highlighted the following admissions: (1) Romero-Rodriguez admitted it was impossible to have worked the hours claimed, (2) Romero-Rodriguez and Villarreal had no explanation or way to substantiate how they worked over 40 hours in any workweek, and (3) Romero-Rodriguez admitted he "guessed" 70 hours a week was the average number of hours worked.  ROA.2147.  The Order further stressed Appellants failed to account for known meaningful variations in their workweeks, including not deducting for days they admit they did not work at all. ROA.2147.  No reasonable jury could have found a "just and reasonable inference" of overtime worked when Appellants' own testimony contradicted such an inference.

On appeal, Appellants attempt to confuse the issue by arguing that the District Court disregarded precedential circuit authority holding that workers' testimony can be enough to shift the burden of proof to the employer.  By framing the issue this way, Appellants ignore the reasons articulated by the District Court for its summary judgment decision.  The fatal flaw in Appellants' case is not *only* that they relied on their own unsubstantiated testimony, but instead the "***numerous shortcomings***" with Appellants' "unwavering" 70 hour a week estimate.  ROA.2147.  These "numerous shortcomings" set this case apart from the cases cited in Appellants' Brief.

13

Further, Fifth Circuit precedent is clear that unsubstantiated testimony is, in fact, insufficient evidence under *Mt. Clemens*. *See Fairchild*, 815 F.3d at 965; *Harvill*, 433 F.3d at 441; *see also Ihegword v. Harris Cnty. Hosp. Dist.*, 555 F. App'x 372, 375 (5th Cir. 2014); *Kirk v. Invesco, Ltd.,* 700 F. App'x 334, 336-337 (5th Cir. 2017); *Shelby v. Boxer,* No. 4:16-CV-1549, 2019 WL 8017865, at *7 (S.D. Tex. Sept. 13, 2019).

Appellants' reliance on the unverified, speculative, attorney-created "summaries" of a single workweek out of Flores' nearly 80 weeks, Romero-Rodriguez's over 30 weeks, and Villarreal's over 70 weeks are equally insufficient to meet Appellants' burden.    ROA.532-36;  ROA.1916-17;  ROA.1996-97; ROA.2059-60.   The "summaries" are inadmissible, cannot disprove Appellants' deposition admissions, and are admittedly unreliable.

Second, Appellants' overtime claim hinges on a finding that Appellants were employees of FS Blinds, and not ICs.  The District Court denied summary judgment for both Appellants and FS Blinds on this issue, finding the existence of a genuine issue of material fact.  ROA.2145.   However, the undisputed facts conclusively prove that Appellants were ICs under controlling Fifth Circuit precedent.  *See e.g., Parrish v. Premiere Directional Drilling*, *L.P.*, 917 F.3d 369 (5th Cir. 2019); *see also, Hargrave v. Aim Directional Servs.*, No. 21-40496, 2022 WL 1487020 (5th Cir. May 11, 2022).  While the Court should not reach the IC issue given Appellants'

inability to meet their *prima facie* burden proving uncompensated overtime, in the unlikely event it does, the Court should determine Appellants were ICs and reverse and render in FS Blinds' favor on this issue.  At the very least, the Court should affirm the District Court's Order finding a genuine issue of material fact.

## **ARGUMENT**

### A.    **The District Court Properly Held that Appellants' Evidence Could Not Create a "Just and Reasonable Inference" of Overtime Worked.**

Under the FLSA, an employee bringing an action for unpaid overtime compensation "has the burden of proving that he performed work for which he was not properly compensated." *Mt. Clemens*, 328 U.S. at 687.  When employer time records are not available—as is the case here—courts apply a burden-shifting analysis. *Id.* at 686-88.  The burden-shifting analysis does not absolve the plaintiff of his burden of proving he performed uncompensated overtime work and the amount thereof; rather, it lowers the plaintiff's burden of proof to a "just and reasonable inference" standard. *Id.* at 687.  For the burden to shift to the employer, the plaintiff must meet his threshold burden of (1) proving that he has in fact performed the work for which he claims he was improperly compensated and (2) producing sufficient evidence to show the amount and extent of that work as a matter of "just and reasonable inference." *Id.*  Only after the plaintiff meets this threshold burden does the burden shift to the employer "to come forward with evidence of the

precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88.

In support of their overtime claim, Appellants offered their post-deposition declarations and summaries created by their attorney, neither of which was sufficient to shift the burden to FS Blinds.  The District Court properly held that "[e]ven with the lowered burden of proof . . . Plaintiff's evidence cannot create a just and reasonable inference of overtime worked and therefore fails as a matter of law." ROA.2147-48.

### 1. Appellants' unsubstantiated declarations alone are not enough to satisfy the *Mt. Clemens* standard.

Appellants erroneously argue that the *Mt. Clemens'* lowered burden of proof allows an employee to rely solely on his unsubstantiated testimony or recollection to shift the burden of proof to the employer.  While *Mt. Clemens* created a "lenient standard" for the employee, it is not without its limitations.  Here, not only are Appellants' declarations unsubstantiated and conclusory, they do not explain Appellants' prior sworn testimony, which directly contradicts the declarations. Appellants admitted there are weeks they *know* they could not have possibly worked overtime (let alone 70 hours), yet Appellants seek damages for those very weeks based on a 70-hour week.  The District Court correctly held that Appellants could not satisfy their "just and reasonable inference" burden in light of these admissions.

a.   *Appellants' declarations are contradicted by their prior sworn deposition testimony.*

Appellants point to their declarations to attempt to satisfy their *prima facie* burden.   Appellants' Br. 25-27 (citing ROA.372; ROA.375; and ROA.378). However, Appellants' declarations are directly negated by their prior deposition testimony, wherein Appellants admitted (1) there were weeks they *knew* they did not work 70 hours but claimed damages using a 70-hour week anyway, (2) they could not explain or substantiate that they worked over 40 hours in any given workweek, and (3) they "cannot remember" if overtime was actually worked.

Romero-Rodriguez claims he worked an average of 70 hours each week he worked for FS Blinds.  ROA.534.  However, when asked if he worked over 40 hours in every week he is claiming, Romero-Rodriguez answered: "I cannot remember." ROA.576.  In his deposition, Romero-Rodriguez admitted that sometimes he worked as few as one to three days in a week, making a 70-hour week impossible.  ROA.580-99.  Critically, the weeks where Romero-Rodriguez only worked one to three days were identifiable.  For example, for the week of June 16, 2019, Romero-Rodriguez admitted that it was impossible for him to have even worked over 40 hours when he only worked one day that week.  ROA.594-96.  For the week of May 26, 2019, Romero-Rodriguez admitted that 19.8 hours was the maximum number of hours he could have worked.  ROA.580-94.  Yet, Romero-Rodriguez seeks damages for both of these weeks based on a 70-hour week.  ROA.534.  The substantial discrepancies

in Romero-Rodriguez's 70-hour a week claim is evidenced by the fact that his compensation from FS Blinds varied significantly. ROA.534. Some weeks he made as little as $180 (proving he worked very few jobs that week) and other weeks he made over $1600. ROA.534; ROA.573-75.

Similarly, Villarreal's compensation each week varied significantly, sometimes making only $97.00 for the week and others over $2,000. ROA.535-36. The record shows that there were weeks where Villarreal only worked one day a week—making it impossible for him to have worked overtime during those weeks, let alone the 70 hours claimed. ROA.1035-41. For example, for the week of March 1, 2020, Villarreal only worked one day. ROA.1035-41. Yet, Villarreal seeks damages for that week based on a 70-hour week. ROA.535-36.

Flores admitted there were weeks he did not work 70 hours. ROA.724-25. The number of jobs Flores worked in a week varied significantly, which is evidenced by the fact that his pay also varied greatly. ROA.532-33. The record shows that there were some weeks where he made as little as $510 for the week, while other weeks over $2000. ROA.532-33. Yet, even for the weeks where he worked substantially fewer jobs, Flores seeks damages based on a 70-hour week. ROA.532-33.

Villarreal and Romero-Rodriguez admitted they had no way of substantiating or explaining how they worked over 40 hours in any workweek. ROA.472;

18

ROA.594, 599-600. Further, Romero-Rodriguez admitted that he "guessed" his purported 70-hour workweek was his "best average." ROA.586-87; ROA.600; *see Oti v. Green Oaks SSC, LLC,* No. 4:13-CV-816-A, 2015 WL 329216, at *3 (N.D. Tex. Jan. 23, 2015) (summary judgment for employer where plaintiff admitted she guessed the number of overtime hours worked); *Dixon v. First Choice,* No. 4:14-CV-02895, 2016 WL 774680, at *3 (S.D. Tex. Feb. 29, 2016) (plaintiff's "unsubstantiated guesswork" was insufficient overtime evidence).

Notwithstanding the clear and direct testimony, Appellants submitted declarations with their summary judgment response making conclusory statements that they worked approximately 70 hours per week, every week. ROA.372; ROA.375, ROA.378.

The declarations allege Appellants worked 11- to 15-hour workdays five to six days a week, yet they fail to provide *any* details or specific facts about what they did during those hours (other than making unsubstantiated assertions about their start and end times). ROA.372; ROA.375; ROA.378. None of the assertions made in Appellants' declarations are "tied to any evidence." *See Garcia v. U Pull It Auto & Truck Salvage, Inc.*, 657 Fed. Appx. 293, 297 (5th Cir. 2016). And, the declarations do not address Appellants contradictory deposition testimony in which they admitted they (1) knew it was impossible to have worked overtime in certain weeks, (2) cannot explain or substantiate how overtime was worked in any week, and (3) "cannot

remember" if they actually worked overtime. *See Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 806 (1999) (recognizing that [f]ederal courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting ... her own previous sworn testimony (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity").

FS Blinds objected to the declarations as conclusory, speculative, and contradictory of prior deposition testimony. ROA.2083. The District Court properly rejected the declarations, stating the "*[m]ost damaging*" defect in Appellants' 70-hour a week estimate "*is their unwavering stance that they worked 70 hours per week even on weeks when doing so would be <u>impossible</u>* because of only working one, two, or three days." ROA.2147.

Appellants attempt to do precisely what the court in *Shelby* rejected—*i.e.,* inflate their alleged overtime hours (and, thus, their damages) by failing to deduct for days they know they did not work. *Shelby*, 2019 WL 8017865, at *7. In *Shelby*, the court held that the plaintiffs did not meet their burden when their evidence "fail[ed] to affirmatively identify or account for partial workweeks on account of vacation, paid time-off, holidays, discretionary holidays, or other time off." *Id.* Like

here, plaintiffs' damages model in *Shelby* failed to deduct the partial workweeks, "even though they had information at hand to make these determinations." *Id.*

Appellants' reliance on *Five Star* and *Hobbs* only supports FS Blinds' argument. *U.S. Dep't of Lab. v. Five Star Automatic Fire Protc., L.L.C.*, 987 F.3d 436, 445 (5th Cir. 2021); *Hobbs v. EVO Inc.*, 7 F.4th 241, 256-57 (5th Cir. 2021). Unlike Appellants here, in *Five Star,* the Department of Labor (the "DOL") made adjustments to its damages calculation to account for days that the employees did not work. *Id.* In fact, the DOL even omitted uncompensated time from its calculation when the available information showed that the employee performed less tasks in a given day. *Id.* Thus, the overtime estimate in *Five Star* did not suffer from the same "just" and "reasonableness" deficiencies that are at issue here, where Appellants claim hours that they admit they did not work. Similarly, in *Hobbs* the district court "reduced the number of hours claimed by each Plaintiff" based on plaintiffs' admissions that they could not have possibly worked the hours claimed. *Hobbs*, 7 F.4th at 257-58.[2]

*Mt. Clemens* requires plaintiff's evidence to create a "just" and "reasonable" inference of overtime worked and the amount and extent of that work. An inference

---

[2] Appellants' reliance on *Hobbs* is further misplaced, because in that case plaintiffs relied on the hours reflected in their contemporaneously recorded timesheets to prove their overtime claims— *i.e.,* not mere unsubstantiated assertions. *Id.* at 256-57. In determining the timesheets were sufficient evidence under *Mt. Clemens*, the Court reasoned that the defendant (1) told the plaintiffs the number of hours to record on the timesheets, and (2) agreed to the accuracy of the timesheet hours, because it used the timesheets to bill its customers. *Id.* None of these facts are present here.

can be neither "just" nor "reasonable" when Appellants admit that their overtime calculation is inaccurate and unexplainable. The District Court highlighted the foregoing "numerous shortcomings" of Appellants' 70-hour week estimations, and properly held Appellants' evidence "cannot create a just and reasonable inference of overtime worked." ROA.2146-48.

      b.    *Unsubstantiated assertions are no evidence under long-standing Fifth Circuit precedent.*

In its Order, the District Court correctly applied Fifth Circuit authority holding "[i]n order to raise a just and reasonable inference . . . an employee must provide more than mere unsubstantiated assertions." ROA.2146 (citing *Kirk*, 700 F. App'x at 336). The Fifth Circuit's rule that unsubstantiated assertions are not enough to raise a "just and reasonable inference" of uncompensated overtime is well established. *See Fairchild*, 815 F.3d at 965; *Harvill*, 433 F.3d at 441.

In 2005, the Fifth Circuit in *Harvill* affirmed summary judgment for the employer where "there was a paucity of evidence to support [Harvill's] claim for unpaid overtime compensation under the Fair Labor Standards Act." *Harvill*, 433 F.3d at 432. Harvill made the unsubstantiated assertion that she worked 210 hours of unpaid overtime, but offered no evidence that she actually worked the hours that she alleged. *Id.* at 441. The Court held there was no error in granting summary judgment for the employer, because Harvill failed to present sufficient evidence of her overtime claim. *Id.*

In 2014, the Fifth Circuit in *Ihegword* affirmed summary judgment for the employer where the plaintiff offered no evidence other than her "***unsubstantiated assertions speculated from memory***, to prove that she actually worked overtime for which she was not compensated." *Ihegword*, 555 F. App'x at 375 (emphasis added). Appellants cited the district court opinion in their brief and claimed it should be ignored because it was not controlling authority. Appellants' Br. 29-30. However, this Court's affirmance and its opinion is controlling authority. *Ihegword*, 555 F. App'x at 375.

To prove her overtime claim, Ihegword relied on her written declaration wherein she testified that she worked "approximately" twelve hours of overtime a week. *Id.* at 375. Just like the present case, Ihegword's overtime claim was an approximate estimate derived from her memory alone and testified to in her post-deposition declaration. *Id.* Further, like here, Ihegword's unsubstantiated claim of twelve hours of overtime a week was contradicted by evidence that she often worked less than a forty-hour week. *Id.* And, like the District Court did here, this Court found that Ihegword's evidence amounted to no evidence. *Id.*

In 2016, the Fifth Circuit reiterated the rule set forth in *Harvill* twice with the decisions of *Fairchild* and *Garcia*. *Fairchild*, 815 F.3d at 965; *Garcia*, 657 F. App'x at 297-98. In *Fairchild*, the only evidence the plaintiff offered to prove she worked overtime and the amount thereof was "her ***unsubstantiated testimony*** that she

23

worked approximately ten hours of overtime a week and was not paid overtime for this period." *Fairchild*, 815 F.3d at 965. The Fifth Circuit held the evidence was insufficient to prove plaintiff's overtime claim. *Id.*

In *Garcia*, the Fifth Circuit affirmed summary judgment for the employer where the employee relied on his sworn affidavit to prove his overtime claim. *Garcia*, 657 F. App'x at 294-95. In affirming the district court's dismissal, the Fifth Circuit cited one of the very basic tenets of summary judgment practice: "A party may not defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Id.* at 296 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). Following this black letter law, the Fifth Circuit rejected Garcia's sworn affidavit—*i.e.,* the only evidence in the record supporting Garcia's overtime claim—and held that the "non-specific assertions" stated in the affidavit were insufficient because they were "not tied to any evidence." *Id.* at 297. The Fifth Circuit explained that, even drawing reasonable inferences in Garcia's favor, his overtime claim was "entirely speculative." *Id.* at 298.

In 2017, the Fifth Circuit in *Kirk* affirmed summary judgment for the employer where the plaintiff offered her own testimony to support her overtime claim. *Kirk*, 700 F. App'x. at 337. Kirk testified that she worked 60 hours a week and probably spent "about 7 to 10 hours enrolling people" in training classes per

day. *Id.* at 335. Citing *Mt. Clemens*, the Fifth Circuit clarified that while the plaintiff "need not prove the precise extent of uncompensated work" to meet her "just and reasonable inference" burden, she "***must provide more than mere unsubstantiated assertions***." *Id.* at 337 (quoting *Harvill*, 433 F.3d at 441).

District courts in this circuit have properly followed the foregoing Fifth Circuit precedent, and dismissed overtime claims where the employee relies on unsubstantiated assertions to satisfy his *prima facie* burden. *See Oti*, 2015 WL 329216 at *3 (summary judgment for employer where the employee offered nothing more than her "***admitted guess***" of overtime hours worked); *Dixon*, 2016 WL 774680 at *3 (plaintiff's declaration and "***unsubstantiated guesswork***" was insufficient evidence of overtime); *Godert v. Palo Alto Networks, Inc.*, 3:16-CV-2079-G, 2017 WL 5901003, at *7-8 (N.D. Tex. Nov. 30, 2017) (plaintiff's "bare, speculative assertions" that he worked approximately 10 hours of overtime per week was insufficient to establish claim for overtime compensation); *Kibodeaux v. A&D Interests, Inc.*, No. 3:20-CV-00008, 2022 WL 980354, at *11 (S.D. Tex. Mar. 31, 2022) (summary judgment for employer where the plaintiff relied on her own declaration stating that she worked more than 40 hours some weeks).

    *c.*    *Appellants' cases are inapposite.*

Appellants erroneously argue that worker testimony and recollections alone are enough to satisfy their burden under *Mt. Clemens*, regardless of whether such

testimony and recollection is unsubstantiated. In the District Court, Appellants relied on the same line of cases as they do on appeal. ROA.1800. The District Court was rightfully unpersuaded. Appellants' cases have no effect on the present case.

First, none of the cited Fifth Circuit cases address whether a plaintiff can rely solely on an unsubstantiated declaration to prove overtime when his declaration is contradicted by prior sworn testimony proving his assertions are false. *See* Appellants' Br. 20-23 (citing *Mitchell v. Riley*, 296 F.2d 614 (5th Cir. 1961); *O'Meara-Sterling v. Mitchell*, 299 F.2d 401 (5th Cir. 1962); *Donovan v. Hamm's Drive Inn*, 661 F.2d 316 (5th Cir. 1981); *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409 (5th Cir. 1975)[3]; *Beliz v. W.H. McLeod & Sons Packaging Co.*, 765 F.2d 1317 (5th Cir. 1985); *Reeves v. Int'l Telephone & Telegraph Corp.*, 616 F.2d 1342 (5th Cir. 1980)).[4] This is the key issue before the Court in the present case, and the stated reasoning behind the District Court's Order. In his Order, Judge Bennett correctly reasoned that the record evidence—including, Appellants' own deposition testimony—proved it was impossible for Appellants to work the hours claimed. ROA.2147-48. Appellants' unsubstantiated and conclusory declarations stating they worked 70 hours every week cannot satisfy their "just and reasonable inference

---

[3] Notably, in *Skipper*, the plaintiff's testimony was, in fact, substantiated by several witnesses, including the defendants themselves. *Skipper*, 512 F.2d at 417-19.

[4] Appellants also erroneously rely on *Castillo v. Givens*, 704 F.2d 181, 195 (5th Cir. 1983). *See* Appellants' Br. 27. The *Castillo* opinion provides no analysis regarding the sufficiency of the employees' testimony—including, whether the testimony was substantiated or suffered from any of the other defects at issue in the present case.

burden" when the declarations are directly negated by their prior sworn testimony. Consistent with this Court's holding in *Ihegword*, the declarations are insufficient for this distinct reason, even under *Mt. Clemens'* lenient standard. *Ihegword*, 555 F. App'x at 375 (plaintiff's reliance on her unsubstantiated declaration was insufficient to prove overtime when her declaration contradicted, without explanation, her prior sworn deposition testimony).[5] Appellants' cited cases do not hold differently.

Second, Appellants ignore the past two decades of Fifth Circuit opinions expressly holding that unsubstantiated assertions are not enough even under *Mt. Clemens'* lowered burden of proof. The law in this circuit has further developed since the cases cited in Appellants' Brief. Recent Fifth Circuit cases make clear that the leniency of a plaintiff's burden under *Mt. Clemens* is not without limitations. *See Harvill*, 433 F.3d at 432 (unsubstantiated assertion of overtime hours without evidence hours were actually worked is insufficient); *Ihegword*, 555 F. App'x at 375; *Fairchild*, 815 F.3d at 965 (unsubstantiated testimony is insufficient); *Garcia*, 657 F. App'x at 297-98 (affidavit is insufficient when not tied to any evidence); *Kirk*, 700 F. App'x. at 337 (unsubstantiated testimony is not enough).

Third, Appellants rely on inapposite cases allowing representative testimony in collective actions and cases brought by the Secretary of Labor to argue that

---

[5] *See also Ihegword v. Harris. Cty. Hosp. Dist.*, 929 F. Supp. 2d 635, 665-68 (S.D. Tex. 2013). This Court, in *Ihegword*, affirmed and adopted the district court's analysis "in full." *Ihegword*, 555 F. App'x at 375.

employees can meet their *Mt. Clemens* burden "without ever saying a word." Appellants' Br. 23 (citing *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir. 1973); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016); *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58 (2nd Cir. 1997); *Reich v. S. Md. Hospital, Inc.*, 43 F.3d 949 (4th Cir. 1995); *Sec'y of Labor v. DeSisto*, 929 F.2d 789 (1st Cir. 1991); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286 (3rd Cir. 1991); *Brock v. Norman's Country Mkt., Inc.*, 835 F.2d 823 (11th Cir. 1998)). Appellants' cases address whether another employee's representational testimony is sufficient to satisfy the burden for non-testifying employees—not whether unsubstantiated testimony is sufficient under *Mt. Clemens*. This case is neither a class action, nor a suit brought by the Secretary of Labor, where employees can be represented by someone other than themselves. Rather, here, Appellants are each required to meet their individual burdens of proving they in fact worked overtime and the amount and extent of that work. Thus, Appellants cannot prevail "without ever saying a word." Appellants' Br. 23. Moreover, none of these cases hold that an employee's testimony is sufficient to meet *Mt. Clemens* when it is contradicted by the employee's prior sworn testimony.

Fourth, Appellants' reliance on cases outside of the Fifth Circuit have no bearing on this case. Appellants' Br. 23-25 (citing *Moran v. Al Basit LLC*, 788 F.3d 201 (6th Cir. 2015); *Kuebel v. Black & Decker, Inc.*, 643 F.3d 353 (2nd Cir. 2011);

*Wirtz v. Dix Box Co.*, 322 F.2d 499 (9th Cir. 1963); *Mumbower v. Callicot*, 526 F.2d 1183 (8th Cir. 1975)). Again, none of these cases involve a plaintiff's admission that he did not actually work any overtime in the very weeks that he asserts overtime damages, as is the case here.[6] To the extent the Court is even inclined to consider non-binding cases outside of this circuit, the Eighth Circuit's decision in *Holaway* is highly analogous to the present case and instructive. *See Holaway v. Stratasys, Inc.,* 771 F.3d 1057, 1060 (8th Cir. 2014).

In *Holaway*, the plaintiff made the bare assertion that he worked an estimated 60 hours a week, every week, of his employment. *Id.* Other than offering his own testimony, Holaway failed to put forth any evidence of the amount and extent of his alleged overtime hours for any week, let alone for every week claimed. *Id.* at 1059-60. Further, like Appellants here, in calculating his hours, Holaway failed to account for days that he did not work. *Id.* at 1060. The Eighth Circuit held that plaintiff's overtime assertion was inaccurate and, thus, insufficient evidence. *Id.* The Eighth Circuit recognized that, under *Mt. Clemens*, Holaway was not required to show "the precise extent of uncompensated work," but because the evidence he offered was "inconsistent and provide[d] no details which would allow a jury to determine

---

[6] While the *Kuebel* case involved the plaintiff's inconsistent testimony, the inconsistency did not rise to the level at issue in this case where the Appellants knew the weeks overtime was not worked yet still seek overtime damages for those very weeks. "It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir.1996).

Holaway worked beyond forty hours in any specific week," he failed to satisfy "even the relaxed evidentiary standard." *Id.* at 1059-60. The same is true here.

### 2. Evidence manufactured by Appellants' attorney does not satisfy *Mt. Clemens.*

The additional evidence Appellants offer is inadmissible, and thus cannot substantiate the assertions made in their declarations. The District Court implicitly rejected the evidence Appellants now rely upon when determining that Appellants lacked *prima facie* evidence to support their overtime claim. "Courts are not required to view evidence presented at summary judgment in the light most favorable to the nonmoving party on the question of admissibility; rather, the content of summary judgment evidence must be generally admissible." *Garcia*, 657 F. App'x at 297.

### a. *Unverified, admittedly inaccurate, speculative, and attorney-created evidence are inadmissible to support Appellants' claims.*

<u>First</u>, Appellants offered summaries created by their attorney of work orders that purportedly represent a single "exemplary week" of hours worked for each Appellant. ROA.1916-17; ROA.1996-97; ROA.2059-60. Appellants do not attempt to explain how summaries created solely by their attorney—**who lacks personal knowledge**—are admissible evidence. Appellants claimed the summaries constitute Federal Rule of Evidence 1006 summaries of voluminous documents. ROA.1798-99. It is unclear if Appellants maintain that position now given that they mention

nothing about Rule 1006 in their Brief. Regardless, the summaries cannot satisfy the requirements of Rule 1006. FS Blinds objected to this evidence, and the District Court properly ignored the summaries in its Order. ROA.2082-84; ROA.2143-2148.

In the Fifth Circuit, "summary charts are, in the trial court's discretion, ordinarily admissible when: (1) *the charts are based on competent evidence* before the jury; (2) the primary evidence used to construct the charts is available to the other side for comparison in order that the correctness of the summary may be tested; (3) *the person who prepared the charts is available for cross-examination*; and (4) the jury is properly instructed concerning their consideration of the charts." *United States v. Winn*, 948 F.2d 145, 159 (5th Cir. 1991). Necessary for admission is the chart preparer's availability for cross-examination, which the Fifth Circuit has mandated for decades. *See e.g., United States v. Chivers*, 488 F. App'x 782 (5th Cir. 2012). Appellants' summaries cannot satisfy this requirement because Appellants' counsel created the summaries, and it is impermissible under the Texas Disciplinary Rules of Professional Conduct for a lawyer to serve as both an advocate and a witness for a client. Tex. Disciplinary Rules of Prof'l Conduct R. 3.08; *see United States v. Solvay,* No. CV H-06-2662, 2016 WL 1258401, at *12-13 (S.D. Tex. Mar. 31, 2016), *aff'd sub nom. United States ex rel King v. Solvay Pharm., Inc.,* 871 F.3d 318 (5th Cir. 2017) ("[E]ven if the underlying data were admissible, the summary charts are not admissible because they were apparently prepared by Relators' lead

counsel, who cannot serve as the proponent of the charts at trial."). Thus, the summaries are inadmissible under Fed. R. Evid. 1006.

Even if admissible, the summaries amount to no evidence because they do not summarize all of the work orders for each Appellant for each week they claim overtime. Instead, Appellants cherry-picked a single week out of Flores' nearly 80 weeks, Romero-Rodriguez's over 30 weeks, and Villarreal's over 70 weeks of work with FS Blinds. ROA.532-36. A single workweek cannot substantiate a claim for overtime for every week worked, as Appellants claim here—especially, when it is undisputed Appellants' workweeks varied from single days to multiple days. ROA.573-75; ROA.723-25.

The summaries are unreliable because they conflict with Appellants' sworn testimony. The summaries assume that it took 7.5 minutes to install a blind, and one minute to measure each window. ROA.1916-17; ROA.1996-97; ROA.2059-60. But, Villarreal testified that he "couldn't answer" how much time it took to perform an installation (ROA.1845), and Romero-Rodriguez could not "be accurate" about how much time it took to do an installation because "everything depends," and that he was "not sure" how much time it took to measure.[7] ROA.1824-25. On their face,

---

[7] The summaries rely on Romero-Rodriguez's post-deposition declaration, wherein he testified that it took him one minute to measure each window. ROA.1929-30. Romero-Rodriguez's declaration contradicts his deposition testimony. ROA.1824-25. Where a declaration is inconsistent with the declarant's prior sworn deposition, the court is proper not to consider it as competent summary judgment evidence. *See Hacienda Records, L.P. v. Ramos*, 718 F. App'x 223, 235 (5th Cir. 2018).

the summaries require the Court to speculate about the amount of time it took to perform tasks that Appellants themselves admit they cannot accurately estimate.

Even though Appellants' cherry-picked which workweeks to summarize, the summaries do not support the claim Appellants worked 70 hours per week. Indeed, Appellants admit that Romero-Rodriguez did not work anywhere close to 70 hours. Appellants argue for the "exemplary week" of April 5, 2019 Romero-Rodriguez worked 55 hours, and that is only if his purported drive time is included (which is also inadmissible for the reasons that follow). Appellants' Br. 11. Despite this concession, Romero-Rodriguez still claims that he is owed damages for the week of April 5, 2019 for working a 70-hour week. ROA.534. This is neither "reasonable," nor "just."

Second, Appellants offered inadmissible drive times to correspond with the "exemplary week" summaries. ROA.1919-23; ROA.1999-2003; ROA.2062-66. The drive times were created solely from calculations made by Appellants' attorney using a third-party website, lacking authentication and constituting inadmissible hearsay. *See Weinhoffer v. Davie Shoring, Inc*., 23 F.4th 579, 582 (5th Cir. 2022) ("[A] witness attempting to authenticate online content as evidence [is] unlikely to have the requisite direct knowledge where that content was created and maintained by a third party."); *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015) (excluding online call logs because witness did not have personal or direct

knowledge necessary to authenticate the website since it was created and maintained by a third party).  Critically, Appellants admitted in their Response to FS Blinds' Motion for Summary Judgment that the drive time calculations were inaccurate. ROA.1798.  ("These are merely approximations.  First, it appears that RouteXL automatically builds five minutes into each stop, even if the stops are very close by. On the other hand, its travel times do not incorporate actual or forecasted traffic."). The drive time calculations are admittedly flawed, inadmissible, and cannot substantiate Appellants' assertions of overtime worked.

Third, Appellants offer the testimony of Bob Simpson.  In Appellants' motion for summary judgment, Appellants expressly rejected any testimony by Simpson regarding estimated hours worked, stating that his testimony was speculative because it was based on his blinds hanging experience 20 years ago and not on Appellants' experience.  ROA.208-09.  Appellants cannot rely on Simpson's testimony to prove the amount of overtime worked when Appellants previously argued that Simpson's testimony was speculative, based only on his experience from 20 years ago, and proves FS Blinds did not know how many hours Appellants worked.  ROA.208-09.

b.     *This Court in* Kirk *rejected reliance on similarly deficient evidence.*

Like the Appellants here, the plaintiff in *Kirk* offered evidence in addition to her unsubstantiated testimony to satisfy her *Mt. Clemens* burden.  *Kirk*, 700 F. App'x

at 335. The Fifth Circuit rejected Kirk's additional evidence for reasons that are analogous to the present case. *Id.* at 337.

First, the Court held that emails sent before, during, and after regular work hours, including weekends, showed "only two- to three-day snapshots of such email activity over the course of three years." *Id.* at 337. Further, even though the emails showed that Kirk worked outside of normal work hours on occasion, "it does not validate Kirk's assertions that she worked more than forty hours in any given week." *Id.* Second, the Court held that GPS phone records were also insufficient to prove she worked more than 40 hours a week because they only showed she worked 11-13 hour days on three separate times over the course of two years. *Id.* Third, the Court rejected the testimony of Kirk's mother because it only accounted for "sporadic instances" of work outside of normal hours. *Id.*

The Fifth Circuit held that "[e]ven though Kirk presented the district court with more than just her own assertions, we agree with the district court's conclusion that this additional evidence is insufficient to substantiate her testimony that she worked overtime." *Id.* The Court explained: "Given that Kirk has presented only evidence of ***sporadic instances*** during which she worked outside of typical hours and has ***admitted that the window during which she worked varied*** depending on when and where trainings were scheduled, we hold that she has failed to present

sufficient evidence allowing a just and reasonable inference that she worked overtime." *Id.* (emphasis added).

Appellants' additional evidence of attorney-created summaries, drive times, and the deposition of a FS Blinds manager are not only inadmissible for the reasons previously stated,[8] but also suffer from the same deficiencies that this Court found compelling in *Kirk*. The District Court properly rejected this evidence, because it cannot substantiate the assertions made in Appellants' declarations or their 70-hour a week damages calculation.

### 3.    The District Court properly rejected Appellants' "average" workweek when Appellants admitted they did not work the hours claimed.

Appellants attempt to discredit the District Court's decision by alleging that it failed to recognize that Appellants were claiming an "average" workweek, and not asserting "that they worked precisely 70 hours per week, every week, without fail." Appellants' Br. 33. The District Court made no such error. The Order expressly acknowledged that "Plaintiff's estimate that they ***averaged*** 70 hours of work per week." ROA.2146 (emphasis added). But, the District Court also properly noted that Appellants' damages spreadsheet "assumes that Plaintiffs worked 70 hours per week, ***every week*** that they worked." ROA.2147 (emphasis added). The District

---

[8] FS Blinds properly objected to this evidence in the District Court for the reasons stated herein. ROA.2082-84.

Court's observation is key. Despite the fact that Appellants admitted to working only one to three days in some weeks, they took the "unwavering" position that they were owed damages based on a 70-hour workweek for *every* week that they performed work for FS Blinds. ROA.2147.

Appellants attempt to explain away their 70-hour a week damages model by arguing that "weekly variations were baked into Appellants' testimony." Appellants' Br. 34. Appellants' argument is not compelling. Appellants knew the weeks when they worked less than 40 hours (let alone, the 70 hours claimed). ROA.532-36; ROA.580-99; ROA.723-25. They could have deducted hours for those weeks in their damages calculation. Instead, they claimed 70 hours for every week to calculate their damages. ROA.532-36. On its face, this is not "just" and "reasonable."

The court in *Shelby* addressed this precise issue. *Shelby*, 2019 WL 8017865, at *7. Shelby alleged that she worked an average of 70 hours "every single week." *Id.* at *3. Just like Appellants here, "Shelby did not account for or deduct her admitted, full-day absences . . . in any of the weeks for which Shelby [sought] an award of damages." *Id.* Instead, she testified that "she should recover overtime for those workweeks as if she had worked the entire workweek." *Id.* Shelby made the same argument that Appellants attempt here—*i.e.,* there were weeks when she worked *more* than 70 hours, so her overstated hours were justified. *Id.* at *4.

However, Shelby "did not identify the particular workweeks during which she worked the additional hours over 70 that would be necessary to mathematically achieve the claimed 'average' 70 hours of work in weeks that Shelby did not work a full workweek." *Id.* The court rejected Shelby's claim.

Here, Appellants attempt to justify the fact that they used a 70-hour a week damages model (even for weeks when they admit they could not have worked nearly 70 hours) by making the unsubstantiated assertion that there were weeks in which they worked over 70 hours a week. However, like *Shelby*, there is no evidence supporting Appellants' claim.[9]

**B.  The District Court Properly Denied Appellants' Motion on the Issue of Damages, because Appellants Failed to Satisfy Their Threshold Burden of Proof.**

The District Court properly concluded that "[e]ven with the lowered burden of proof, the Court finds the Plaintiffs' evidence cannot create a just and reasonable inference of overtime worked and therefore fails as a matter of law." ROA.2146-47. Thus, the burden did not shift to FS Blinds to "[negate] the reasonableness of the inference to be drawn from the [Appellants'] evidence," because Appellants did

---

[9] Appellants do not identify a single week where Romero-Rodriguez worked over 70 hours. While Appellants make the bare assertion that Flores exceeded 80 hours the week of March 8, 2019, no evidence is cited to substantiate his alleged drive time. *See* Appellants' Br. 10-11. Instead, Appellants only cite to the inadmissible attorney-created summaries of tasks worked, which claim he worked 59.8 hours. Appellants point to February 25, 2019 as a week when Villarreal purportedly worked 72.5 hours, but, again, the underlying evidence to substantiate that amount is inadmissible and admittedly flawed for the reasons set forth in *supra* pp. 33-37.

not meet their threshold burden. *Mt. Clemens*, 328 U.S. at 687-88. Because Appellants failed to meet their *prima facie* burden, the District Court properly denied Appellants' motion for summary judgment.

**C.    Appellants Were Independent Contractors under the Economic Realities Test.**

This Court should affirm the District Court's decision granting summary judgment in favor of FS Blinds because Appellants failed to carry their burden of proof to prove overtime worked. In the unlikely event this Court disagrees with the District Court on this issue, FS Blinds is still entitled to judgment as a matter of law because Appellants were ICs, not employees. The District Court found that there were genuine issues of material fact on this question. FS Blinds submits that the evidence conclusively establishes that Appellants were ICs, and, thus, not entitled to overtime.

A plaintiff bringing an action under the FLSA for unpaid wages must first demonstrate that an employer-employee relationship existed during the unpaid periods claimed. *Parrish*, 917 F.3d 369, 379. The Fifth Circuit applies five non-exhaustive factors to determine whether plaintiffs are employees or ICs: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer, (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer, (4) the skill and initiative required in performing the job, and (5) the permanency of the

relationship." *Id*. "[N]o single factor is determinative," and not all factors must be met to find an IC relationship exists. *Id*. at 380.

### 1. FS Blinds did not control Appellants' work.

#### a. Appellants worked without supervision and instruction.

Appellants worked without supervision or oversight from FS Blinds, and determined how to perform their jobs without instruction. ROA.462; ROA.558; ROA.716. The Fifth Circuit has held that this fact is persuasive of IC status. *See Parrish*, 917 F.3d at 381-82; *Thibault v. Bellsouth Telecomms, Inc.*, 612 F.3d 843, 846-47 (5th Cir. 2010).

#### b. FS Blinds did not control Appellants' schedules.

Appellants could request to be left off the schedule without penalty. ROA.567-69; ROA.1050. When few jobs were available, FS Blinds asked Appellants if they wanted work and the choice was theirs. ROA.452; ROA.712-13. FS Blinds did not tell Appellants that they had to work certain hours of the day. ROA.561-63; ROA.718. Appellants determined break times, when to complete the job, and the order and route of the jobs on their schedules. ROA.453-54; ROA.559-60; ROA.707-11; ROA.1054-55. Appellants were not required to notify or check-in with FS Blinds when they arrived at a job site, completed a job, or were done for the day. ROA.458, 463-64; ROA.552; ROA.714, 717-18. These facts are indicative of IC status. *See Parrish*, 917 F.3d at 382; *Carrell v. Sunland Constr., Inc.*, 998 F.2d

330, 333 (5th Cir. 1993); *Eberline v. Media Net, L.L.C.*, 636 F. App'x. 225, 227-28 (5th Cir. 2016).

While FS Blinds provided the schedule to Appellants, FS Blind's *customers* set the schedules by identifying the jobs and dates for completion, and *Appellants* set their schedules by notifying FS Blinds when they were unavailable to work. ROA.1054-55. The number of jobs assigned to Appellants was based on their past efficiency and requests for additional work. ROA.1043-45, 1047-49, 1058-59. Thus, Appellants' work was controlled by customer demand, Appellants' efficiency, and Appellants' requests—not by FS Blinds.

Appellants falsely claim that *FS Blinds* mandated certain jobs be performed at specific times. Notably, on most occasions, Appellants' schedules indicated that the job could be completed at "ANY TIME." ROA.453-54 (discussing ROA.619); ROA.707-11 (discussing ROA.621). If a schedule requested a timeframe, that request came from the *customer*—not FS Blinds. ROA.707-11; ROA.1054-55. Requesting work be completed at a certain time does not transform a worker into an employee. *See Parrish*, 917 F.3d at 381-82 (company selected which IC to use for the job and assigned certain shifts); *Carrell*, 998 F.2d at 333 (IC status where plaintiffs were required to work specific days and hours, and take the same daily break); *Thibault*, 612 F.3d at 846-47; *Hargrave*, 2022 WL 1487020 at *2 (telling plaintiff "where to go and when" did not "militate" in favor of employee status).

Moreover, even if a customer requested a timeframe, installers did not always meet the request, and there was no consequence for failing to do so. ROA.1341-1344. Similarly, even if FS Blinds expected that the jobs on Appellants' schedules be completed on the day they were assigned, Appellants could carry the work over to another day without penalty. ROA.564-65; ROA.719-23. Even though FS Blinds suggested that installers arrive at the warehouse between 6:00-8:00 a.m. to load their blinds, installers that showed up later (as late as 11:00 a.m. for Villarreal) continued to receive work without consequence. ROA.1228-29; *see Eberline*, 636 F. App'x at 227 (IC status where there were no repercussions for late arrivals).

Appellants also overstate their assertion that FS Blinds could require mandatory meetings. The record shows that on a *single* occasion in *twelve to thirteen years* a 15-minute installer meeting was called during the morning load-out. ROA.1226, 1233, 1239. Clearly, the law allows meetings with ICs without necessitating classification as employees. *See Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998) (drivers required to attend an orientation session); *Parrish*, 917 F.3d at 382 (plaintiffs required to attend mandatory safety training).

Appellants' reliance on *Hobbs* is misplaced. *Hobbs v. Petroplex Pipe and Constr., Inc.*, 946 F.3d 824 (5th Cir. 2020). In *Hobbs*, the defendant assigned plaintiffs' hours; whereas, here, Appellants admit FS Blinds did not set their hours.

*Id.* at 830; ROA.561-63; ROA.718.  The plaintiffs in *Hobbs* never turned down assignments; whereas, here, Appellants admit they told FS Blinds when they did not want to work and did so without repercussion.  *Hobbs*, 946 F.3d at 830; ROA.567-69; ROA.1050.  The plaintiffs in *Hobbs* were penalized and sent home if they showed up late; whereas, here, if Appellants showed up outside of the suggested 6:00-8:00 a.m. timeframe, they still received work.  *Hobbs*, 946 F.3d at 830; ROA.1228-29.

### c.     *FS Blinds' customers evaluated Appellants' work.*

Appellants' heavy reliance on the fact that, at times, Appellants had to fix their mistakes is unpersuasive under Fifth Circuit precedent and defies common sense.

First, the customer, *not FS Blinds*, identified Appellants' mistakes. ROA.1250-51; ROA.1345-46.  This points directly to IC status:  Appellants worked free of supervision and oversight, and the quality of their work was not checked by FS Blinds—it was checked by the customer.

Second, it is self-evident that a company can require its ICs to do quality work without transforming the workers into employees.  If Appellants are correct, an IC has no incentive to do his work correctly because the company has no ability to require correction of unsatisfactory work.  But, this is not the law.  *See Parrish*, 917 F.3d at 382 ("[M]eeting clients' specifications . . . is consistent with the usual path of an IC."); *Duplan v. Harper*, 188 F.3d 1195, 1201 (10th Cir. 1999) ("[A] standard

quality assurance provision by which the [putative employer] reserves the right to determine whether it is satisfied with the services it is purchasing under the contract" is consistent with IC status.).

        *d.*    *Additional control facts in favor of IC status.*

The Fifth Circuit has previously found IC status when plaintiffs hire other workers to assist them. *See Eberline*, 636 F. App'x at 227-28. Here, Appellants hired their own workers and determined all aspects of their working relationship with them—*e.g.,* their pay, hours, job duties, and when to hire/fire. ROA.473-76; ROA.659-64, 680-83.

Additionally, Appellants never received performance evaluations and were not required to wear uniforms. ROA.458, 465; ROA.552, 559; ROA.715. Further, nothing in the IC Agreements prohibited Appellants from working for a competitor. ROA.491-525; *see Talbert v. Am. Risk Ins. Co.*, 405 F. App'x 848, 856 (5th Cir. 2010).

**    2.    Appellants made substantial investments.**

For the investment factor, the ultimate question is whether *Appellants* invested in their individual businesses to such a degree that as a matter of economic reality they were in business for themselves. *Carrell*, 998 F.2d at 332; *Herman*, 161 F.3d at 303. Appellants' admissions and sworn statements to the IRS prove they made substantial investments in their individual businesses—to the tune of nearly

**$50,000**/year for Flores and Villarreal—resulting in a **50-70% deduction** in their

taxable income:

In 2018, Flores deducted the following expenses [ROA.743-44]:

- **$27,080**:      **Van used solely for installation work**. ROA.665-66.
- **$6,000**:       **Contract labor**
- **$1,080**:       **Insurance (other than health)**.
- **$350**:         **Legal and professional services**.
- **$1,910**:       **Repairs and maintenance**.
- **$1,811**:       **Small tools**.
- **$1,615**:       **Phone, internet, and fax**.
- **$2,839**:       **Material costs**.
- **$750**          **Business use of his house**.

   **$43,435**:    Total expenses claimed, reducing Flores' taxable
                   income from $62,866 to $19,431.

In 2019, Flores deducted the following expenses [ROA.755-56]:

- $**19,507**:      **Van used solely for installation work**.
- **$3,800**:       **Contract labor**.
- **$1,200**:       **Insurance (other than health)**.
- **$350**:         **Legal and professional services**.
- **$2,007**:       **Repairs and maintenance**.
- **$3,780**:       **Small tools**.
- $**1,827**:       **Phone, internet, fax**.
- **$11,299**:      **Material costs**.
- **$3,618**:       **Breakage and returned items**.
- **$750**          **Business use of his house**.

**$48,138**:   Total expenses claimed, reducing Flores' taxable income
               from $71,817 to $23,679.

In 2018, Villarreal deducted the following expenses [ROA.769-70]:

- **$10,037:**    **Truck used for installation work.** ROA.479-80.
- **$2,800**:    **Contract labor**.
- **$380**:    **Legal and professional services**.
- **$670**:    **Supplies.**
- **$1,140:**    **Phone.**
- **$354**:    **Tolls.**

**$15,381:**    Total expenses claimed, reducing Villarreal's taxable income from $33,131 to $17,750.

In 2019, Villarreal deducted the following expenses [ROA.782-83]:

- **$18,234:**    **Truck used for installation work.** ROA.486-87.
- **$7,500:**    **Contract labor.**
- **$17,000:**    **Depreciation**.
- **$365**:    **Legal and professional services**.
- **$1,300**:    **Supplies**.
- **$1,140**:     **Phone**.
- **$2,155**:    **Tolls**.

**$47,694:**    Total expenses claimed, reducing Villarreal's taxable income from $64,519 to $16,825.

In 2019, Romero-Rodriguez deducted the following expenses [ROA.800-01]:

- **$15,265**:    **Van used solely for installation work.** ROA.602-03.
- **$591**:    **Supplies**.

**$15,856:**    Total expenses claimed, reducing Romero-Rodriguez's taxable income from $31,622 to $15,766.

Appellants contributed all tools, equipment, transportation, and helpers needed to complete the work.  Additionally, Flores, personally purchased $4,604 in blinds to install for non-FS Blinds customers.  ROA.643-59; ROA.686-700.

To the extent FS Blinds' investment is even relevant, the only investment that matters is FS Blinds' investment in the ***specific job*** Appellants performed (*i.e.,* installation). *Parrish*, 917 F.3d at 383 (comparing the amount Premiere and each plaintiff invested ***at the drill site***); *Thibault*, 612 F.3d at 847. It is undisputed that FS Blinds' *only* investment at the home site is the window coverings. ROA.455-56, 458-59; ROA.704-05. Comparing FS Blinds' single investment to Appellants' substantial investments supports IC status.

The cases cited by Appellants are unavailing. In *McLaughlin*, the plaintiffs only provided garments and knives. *McLaughlin v. Seafood, Inc.* 867 F.2d 875, 876 (5th Cir. 1989). Here, Appellants provided everything from vehicles, to helpers, office space, supplies, tools, materials, utilities, and insurance. Similarly, in *Robicheaux*, the plaintiffs only invested in welding equipment at a cost between $5,000-$7,000; not the nearly $50,000/year claimed in Flores' and Villarreal's tax returns. *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 665 (5th Cir. 1983). In *Rutherford*, the plaintiffs "***merely***" provided a hook, knife, knife sharpener, and apron. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 725 (1947) (emphasis added). In *Hobbs*, the investments by defendant far exceeded those made by FS Blinds—Petroplex paid for plaintiffs' helpers, expensive equipment, and safety school for plaintiffs. *Hobbs*, 946 F.3d at 832.

Appellants' citation to *Donovan* only undermines Appellants' argument. *Donovan v. Tehco, Inc.*, 642 F.2d 141 (5th Cir. 1981). There, the Fifth Circuit held that the worker who *only* supplied "some hand tools" was an employee; while, the worker who hired his own workers to assist him on the job was an IC. *Id.* at 143-144.

### 3.    Appellants controlled their profits and losses.

Pursuant to the Fifth Circuit, relevant facts to determine whether a worker controls his opportunity for profit or loss include whether: (1) "installation jobs were assigned based on an individual installer's efficiency rate on previous jobs" (*Eberline*, 636 F. App'x at 228)[10]; (2) "installers could determine the days and times that they were available to work" (*Id.*); and (3) the worker can "increase[ ] profits by controlling costs" (*Thibault*, 612 F.3d at 848). The Fifth Circuit has also held that "deducting business expenses is indicative of IC status." *Hargrave*, 2022 WL 1487020, at *3 (citing *Parish*, 917 F.3d at 384-85).

Here, the more jobs Appellants took from FS Blinds (determined by their requests for additional work, past efficiency rate, and availability as communicated to FS Blinds), the more profit Appellants made. Appellants controlled their

---

[10] Appellants' reliance on a 10th Circuit case to argue that a worker's efficiency is not relevant to the profit/loss inquiry is directly contradicted by the Fifth Circuit's controlling holding in *Eberline*. Appellants' Br. 47 (citing *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436 (10th Cir. 1998)).

profits/losses by determining how much to spend on expenses compared to how much work they accepted. Appellants' tax returns prove they made decisions regarding how much to spend on tools, vehicles, materials, etc. Further, Appellants took advantage of *significant* tax deductions to increase their profits. Appellants also assessed whether they could afford helpers and how much to pay them. ROA.473-74.

Additionally, Appellants' schedules allowed the opportunity for additional work. ROA.570; ROA.1259, 1275. More importantly, Flores did, in fact, simultaneously work for others. ROA.643-59, 686-700.

### 4.     Appellants showed initiative.

Appellants "could receive more installation jobs, and thus more profits, based on their efficiency" and "they could control the days that they worked." *Eberline*, 636 F. App'x at 228-229; ROA.451; ROA.542-43. Critically, the Court in *Eberline* held that these facts could lead a reasonable jury to conclude that plaintiffs "exercise[d] significant initiative as an installer, a finding weighing in favor of [IC] status." *Id.* at 229.

### 5.     Appellants worked on a project-by-project and short term basis.

First, where the relationship is 10 months or less, IC status is more likely to be found. *See Parrish*, 917 F.3d at 387 (only three of the five plaintiffs worked for Premiere for 10 months or longer); *Hargrave*, 2022 WL 1487020, at *5 (IC status

where plaintiff worked for a six-month period); *Mack*, 2012 WL 1067398 at *5-6 (relationship was not permanent where plaintiffs worked for defendant for approximately nine to 20 months).  Here, Romero-Rodriguez worked for FS Blinds for less than eight months.  ROA.534.  While Villarreal's relationship with FS Blinds spanned approximately 20 months, he had several gaps where he did not work with FS Blinds—including a month long gap, and 10 additional weeks where he was not scheduled.  ROA.449; ROA.535-36.

Second, Appellants admit:

- They worked on a project-by-project basis.  ROA.466; ROA.567.

- They were not guaranteed work.  ROA.466; ROA.566.

- They would work less than a five-day workweek.  ROA.467; ROA.570.

The record further shows:

- Appellants were free to terminate their relationships with FS Blinds at any time (and, in fact, did).  ROA.494; ROA.503; ROA.521.  For example, Villarreal admitted that he "left" the company for over a month and then later returned.  ROA.468-69.

- Appellants were not prohibited from working for other entities, including FS Blinds' competitors.  ROA.491-525; *see Talbert*, 405 F. App'x at 856; *Herman*, 161 F. 3d at 303.

- In the case of Flores, he did in fact work for others while also working for FS Blinds.  ROA.643-59, 686-700.

Contrary to Appellants' assertion, it is immaterial that Appellants accepted back-to-back projects.  *See Hargrave*, 2022 WL 1487020, at *5.

**6.    Appellants' reliance on a non-traditional factor is unavailing.**

Although the Fifth Circuit's five factors are non-exhaustive, and courts *may* consider other factors, additional factors rarely (if ever), change the analysis. Appellants' decision to lead its argument with a non-traditional factor underscores the absence of facts indicative of employee status under the five factors. Even if the Court considers whether Appellants were "integral," the facts still prove Appellants were ICs.

       *a.    Consideration of the "Integral to the Business" factor is not supported.*

The Fifth Circuit has rarely discussed the non-traditional "integral to the business" factor, and, when it has, the Court ultimately decided not to consider it or held that it did not change the Court's determination under the traditional five factors. Appellants' cited cases are unpersuasive for this reason.

In *Hobbs*, the integral factor did not affect the Court's analysis, and was only considered because both parties asked the Court to do so. *Hobbs*, 946 F.3d at 836. Having done so at the parties' request, the Court held that the factor was "neutral" in the Court's "overall assessment under the economic realities test." *Id*.

In *Shultz*, the Court did not apply the integral factor. *Shultz v. Hinojosa*, 432 F.2d 259, 264 (5th Cir. 1970). In *Mitchell*, the Court used the term "integral" only

once and in the context of the skill factor—not to establish a new factor. *Mitchell v. Strickland Transp. Co.*, 228 F.2d 124, 127 (5th Cir. 1955).

Appellants' citation to a 30-year-old, uncited, Western District of Texas opinion is equally unavailing, particularly because the court did not expressly base its ruling on whether the plaintiffs were integral. *Martin v. Circle C Inv., Inc.*, No. MO-91-CA-43, 1991 WL 338239, at *3-6 (W.D. Tex. Mar. 27, 1991) (term "integral" not used; court focused on traditional five factors).

Appellants' citations to Third and Sixth Circuit cases have no bearing on this case. The Third and Sixth Circuits expressly include the "integral" factor as one of *six* factors in their IC/employee test. *See Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382-83 (3d. Cir. 1985); *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019). This factor is notably absent from the Fifth Circuit's *five* factor test, which governs this case.

> ### b.    In the Fifth Circuit, installers are ICs even when they install the precise product the company sells.

FS Blinds is in the business of *selling* window coverings. ROA.1230-31; ROA.1246-48. It is undisputed that Appellants were in no way involved in sales. Thus, while they were involved in one aspect of FS Blinds' overall business (*i.e.,* installation), Appellants had zero involvement with the primary business of the Company—*sales*.

Even still, under Fifth Circuit precedent, the mere fact that a plaintiff performs the precise service that the company sells to its customers does not transform the plaintiff from an IC to employee. *See Herman*, 161 F. 3d at 301, 305 (plaintiffs, drivers for defendant's courier services, were ICs even though they performed the exact service defendant sold). In *Eberline*, defendant's sole business was the installation and repair of satellite TV systems. *Eberline*, 636 F. App'x at 225-26. Defendant engaged plaintiffs as installers to perform this exact service. *Id.* Instead of considering whether the plaintiffs were "integral," the Fifth Circuit correctly focused on whether "installers were so economically dependent on Defendants as to be employees," and determined workers were properly classified as ICs. *Id.* at 229. Thus, contrary to Appellants' assertion, the mere fact that a worker installs the product sold by the company does not make the worker an employee.

c.    *Additional extraneous factor to be considered, if any.*

If the Court entertains whether Appellants were integral to FS Blinds' business, it should also consider the following additional extraneous factor: Appellants represented themselves as ICs.

Appellants signed sworn statements to the IRS stating they were sole proprietors. ROA.491-525. They deducted ***tens of thousands of dollars*** in "business expenses" related to their proprietorships from their taxable income each year, and paid self-employment tax. Further, Appellants represented they were ICs

when they signed their IC Agreements as "Sole Proprietor(s)." Appellants' IC Agreements defined their relationship as ICs, and disclaimed any inference of an employment relationship. The Fifth Circuit has previously determined that similar facts are relevant to the Court's analysis in determining whether a worker is an IC. *See Carrell*, 998 F.2d 330, 334.

> **7.    FS Blinds is not precluded from arguing each economic realities factor.**

Appellants make the unfounded argument that FS Blinds is foreclosed from applying the record evidence to the five-factor test. Appellants contend that FS Blinds cannot argue, or offer evidence in support of, anything other than the reasons its corporate representative, Mark Calagna ("Calagna"), stated as "[t]he basis for [FS Blinds'] assertion that Plaintiffs were properly classified as independent contractors." Appellants are wrong for each of the following reasons.

First, Mr. Calagna did in fact testify as to each of the economic reality factors as the basis for FS Blinds' position that Appellants were properly classified. Appellants' claim that Mr. Calagna's testimony was limited to two reasons (*i.e.,* that the workers signed IC agreements, and because it was industry standard) is patently false. Appellants' counsel specifically questioned Mr. Calagna about FS Blinds' Response to Plaintiffs' Interrogatory No. 4, which asked FS Blinds to "[s]tate the complete factual and legal basis for your assertion that Plaintiffs were properly classified as independent contractors and were properly paid as independent

contractors." ROA.2096. FS Blinds' interrogatory response, and corresponding deposition testimony, addressed how each of the five economic reality factors establish IC status for Appellants. ROA.2096-2103; ROA.2110-2112. Separately, Mr. Calagna also testified that factors that "informed the question of whether [FS Blinds'] installers are employees or independent contractors" included, *inter alia*, (1) Appellants' discretion regarding resources to complete the work, their hours and schedules, and the amount of work they decided to take, (2) lack of oversight by FS Blinds, and (3) overall, the "reality of the working relationship"— the ultimate inquiry of the economic realities test. ROA.2088-2095.

<u>Second</u>, the testimony of FS Blinds' corporate representative does not constitute a judicial admission that precludes additional (or even contradicting) argument and evidence. *See Lindquist v. City of Pasadena*, 656 F. Supp. 2d 662, 698 (S.D. Tex. 2009) ("A Rule 30(b)(6) deposition is admissible against the party designating the representative ***but is not "binding" on the entity for which the witness testifies in the sense of preclusion or judicial admission***.") (emphasis added). A corporate representative's testimony is merely evidence, not a judicial admission. *See Johnson v. Big Lots Stores, Inc.*, Nos. 04-3201, 05-6627, 2008 WL 6928161, at *3 (E.D. La. May 2, 2008) (citing *e.g., Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001)). The critical difference between a judicial admission and an evidentiary admission is as follows:

> A judicial admission is a formal concession in the pleadings or stipulation by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention . . . By contrast, ***an ordinary evidentiary admission is merely a statement of assertion or concession made for some independent purpose, and it may be controverted or explained by the party who made it***.

*Martinez*, 244 F.3d at 476-77. (emphasis added).

Third, Appellants' argument mischaracterizes the economic realities test as an assessment of the *reasons* why the purported employer believed the classification was proper, rather than the economic reality of whether Appellants were in business for themselves. FS Blinds' reasons as to why it believes Appellants were properly classified is not relevant to the inquiry of whether or not Appellants were ICs under the economic realities test. *See Carrell*, 998 F.2d at 332.

### 8.     Conclusion.

While the Court should not reach the IC issue given Appellants' inability to meet their *prima facie* burden proving uncompensated overtime, in the unlikely event it does, the foregoing undisputed facts prove Appellants were ICs as a matter of law. Thus, should the Court reach this issue, it should reverse and render in FS Blinds' favor. At the very least, the Court should affirm the District Court's Order finding a genuine issue of material fact.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellee FS Blinds, LLC respectfully asks that this Court affirm the District Court's Order granting FS Blinds, LLC's Motion for Summary Judgment, and denying Appellants' Partial Motion for Summary Judgment Regarding Affirmative Defenses and Motion for Summary Judgment Regarding Liability and Damages. In the unlikely event the Court reverses the District Court's Order on the issue of Appellants' *prima facie* burden of proving uncompensated overtime, the Court should hold Appellants were not employees of FS Blinds, LLC and reverse and render in FS Blinds' favor on that issue. At a minimum, FS Blinds, LLC respectfully asks the Court to affirm the District Court's Order finding a genuine issue of material fact exists regarding whether Appellants were employees.

Respectfully submitted,

**PORTER HEDGES LLP**

By:  */s/ Stephen H. Lee*
    Stephen H. Lee
    Federal ID No. 18313
    slee@porterhedges.com
    Kelly R. Ferrell
    Federal ID No. 2647526
    kferrell@porterhedges.com
    1000 Main Street, 36th Floor
    Houston, Texas 77002
    (713) 226-6686 – telephone
    (713) 226-6386 – facsimile

**Attorneys for FS Blinds LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that this Brief of Appellee was electronically filed with the United States Fifth Circuit Court of Appeals on July 11, 2022 and electronically served on counsel for the Appellants at the addresses below:

Andrew S. Golub (asgolub@dowgolub.com)
DOW GOLUB REMELS & GILBREATH, PLLC
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056

*/s/ Stephen H. Lee*
Stephen H. Lee

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

1.     The brief contains 12,896 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     The brief has been prepared in a proportionally spaced typeface in Times New Roman 14 point font in text and Times New Roman 12 point font in the footnotes.

*/s/ Stephen H. Lee*
Stephen H. Lee

13461548