## CASE NO. 22-20095

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

JOSE FLORES; JEAN ROMERO-RODRIGUEZ; BRANDON VILLARREAL,
**Plaintiffs – Appellants**

v.

FS BLINDS, L.L.C.
**Defendant – Appellee**

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

---

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

---

**Andrew S. Golub**
**Lauren Van Ness**
**Dow Golub Remels & Gilbreath, PLLC**
**2700 Post Oak Blvd., Suite 1750**
**Houston, Texas 77056**
**(713) 526-3700 (Office)**
**(713) 526-3750 (Fax)**

**August 1, 2022**

# TABLE OF CONTENTS

Table of Contents ..................................................................................... i

Table of Authorities .............................................................................. iii

Preliminary Statement ............................................................................1

Argument.................................................................................................2

    A.    Workers' Recollections, Standing Alone, Are Enough to Create a "Just and Reasonable Inference" of Overtime Hours Worked..........2

        1.    A short recap of precedent. ........................................................2

        2.    *Kirk* and *Ihegword* are not precedent.........................................4

    B.    Appellants Showed by Just and Reasonable Inference That They Worked Overtime and Were Not Paid for It. .......................................8

        1.    Appellants met their *Mt. Clemens* burden via their testimony and other record evidence. ........................................8

        2.    FS Blinds cynically says *averaging* 70 hours per week means 70 hours every single week. ..........................................13

        3.    There are no "contradictions" in the record..............................15

    C.    FS Blinds Failed to Disprove Appellants' Testimony That They *Averaged* Seventy Hours Per Week. ..................................................18

    D.    Appellants Were Employees Under the Controlling Economic Realities Test. .......................................................................................20

        1.    Integral workers are ordinarily employees. ..............................20

        2.    Control. .................................................................................21

        3.    Appellants could not increase profits by working faster. .........24

4.  Purchasing a few blinds for friends and family did not make Flores an independent contractor. ...................................25

5.  Taxes. .....................................................................25

6.  Project Work. ..........................................................26

7.  Investments. ...........................................................27

Conclusion and Prayer .........................................................28

Certificate of Service ...........................................................29

Certificate of Compliance ......................................................30

## TABLE OF AUTHORITIES

## Cases

*Acosta v. Off Duty Police Servs. Inc.*, 915 F.3d 1050 (6th Cir. 2019)......................21

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946)........................... passim

*Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668 (1st Cir. 1998) .........21

*Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317 (5th Cir. 1985)..............4

*Brock v. Superior Care,* 840 F.2d 1054 (2nd Cir. 1988) ..........................................21

*Burton v. DRAS Partners, LLC*, 2019 WL 5550579
(N.D. Ill. Oct. 27, 2019)......................................................................................26

*Carrell v. Sunland Const., Inc.*, 998 F.2d 330 (5th Cir. 1993) .................................27

*Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 Fed. App'x 57
(5th Cir. 2009)......................................................................................................27

*Donovan v. Hamm's Drive Inn,* 661 F.2d 316 (5th Cir. 1981) ....................................3

*Eberline v. Media Net, L.L.C.,* 636 F. App'x 225 (5th Cir. 2016)............................24

*Fairchild v. All Am. Check Cashing, Inc.,* 815 F.3d 959 (5th Cir. 2016).......... 5, 6, 7

*FDIC v. Abraham*, 137 F.3d 264 (5th Cir. 1998) ......................................................6

*Garcia v. U Pull It Auto & Truck Salvage, Inc.*, 657 Fed. App'x 293 (5th
Cir. 2016) .........................................................................................................7, 8

*Gate Guard Services L.P. v. Solis*, 2013 WL 593418
(S.D. Tex., Feb. 13, 2013) ...................................................................................27

*Guzman v. Allstate Assurance Co.*, 18 F.4th 157 (5th Cir. 2021)................................5

*Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428 (5th Cir. 2005)............. 5, 7, 8

*Herman v. Express Sixty-Minutes Delivery Service,* 161 F.3d 299
     (5th Cir. 1998)...................................................................................27

*Hobbs v. Petroplex Pipe and Constr., Inc.,* 946 F.3d 824 (5th Cir. 2020) ........ 21, 26

*Hopkins v. Cornerstone Am.,* 545 F.3d 338  (5th Cir. 2008), *cert. denied,*
     556 U.S. 1129 (2009)................................................................. 26, 27

*Ihegword v. Harris Cnty. Hosp. Dist.,* 555 F. App'x 372 (5th Cir. 2014) ........ 4, 6, 7

*Ihegword v. Harris County Hosp. Dist.,* 929 F. Supp.2d 635
     (S.D. Tex. 2013) ................................................................................7

*Kirk v. Invesco, Ltd.,* 700 F. App'x 334 (5th Cir. 2017), *cert. dism'd,* 138
     S.Ct. 1164 (2018)...........................................................................4, 7

*Marshall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598 (5th Cir. 1979)... 11, 19, 20

*Mednick v. Albert Enterprises, Inc.,* 508 F.2d 297 (5th Cir. 1975) .........................23

*Mitchell v. Riley,* 296 F.2d 614 (5th Cir. 1961) ...........................................................3

*Moran v. Al Basit LLC,* 788 F.3d 201 (6th Cir. 2015).........................................9, 14

*O'Meara-Sterling v. Mitchell,* 299 F.2d 401 (5th Cir. 1962) .....................................3

*Parrish v. Premier Directional Drilling, L.P.,* 917 F.3d 369 (5th Cir. 2019)..........25

*Real v. Driscoll Strawberry Associates, Inc.,* 603 F.2d 748 (9th Cir. 1979)............21

*Reeves v. Int'l Telephone & Telegraph Corp.,* 616 F.2d 1342 (5th Cir.
     1980), *cert. denied,* 449 U.S. 1077 (1981) ............................................... passim

*Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662 (5th Cir. 1983).......................25

*Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947)......................................26

iv

*Salazar v. Molina,* 37 F.4th 278 (5th Cir. 2022) ........................................................4

*Scantland v. Jeffry Knight, Inc.*, 721 F.2d 1308 (11th Cir. 2013) ...........................21

*Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298 (4th Cir. 2006) .............................21

*Secretary of Labor v. Lauritzen,* 835 F.2d 1529 (7th Cir. 1987), *cert. denied*, 488 U.S. 898 (1988)...............................................................................21

*Skipper v. Superior Dairies, Inc.,* 512 F.2d 409 (5th Cir. 1975) ...................... passim

*U.S. Dep't of Labor v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436 (5th Cir. 2021), *cert. denied*, 142 S.Ct. 1667 (2022)................... 3, 9, 12, 14

*U.S. v. Holmquist*, 36 F.3d 154 (1st Cir. 1994), *cert. denied*, 514 U.S. 1084 (1995)...............................................................................................................10

*U.S. v. Lewis*, 796 F.3d 543 (5th Cir. 2015) ...........................................................10

*U.S. v. Ruffin*, 575 F.2d 346 (2nd Cir. 1978) ........................................................10

*U.S. v. Traxler*, 764 F.3d 486 (5th Cir. 2014).........................................................7

*Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308 (5th Cir.), *cert. denied*, 429 U.S. 826 (1976).................................................. 22, 23, 26, 27

*Walsh v. Alpha & Omega USA, Inc.*, ___ F.4th ___, 2022 WL 2719984 (8th Cir., July 14, 2022) .....................................................................................21

## Rules

Fed. R. Civ. P. 56(c)(2)...........................................................................................11

Fed. R. Evid. 103(a)(1)(B) ......................................................................................10

**<u>Regulations</u>**

29 C.F.R. § 531.35 ...................................................................................................26

## PRELIMINARY STATEMENT

A company hires unskilled ditch-diggers who work regularly for an extended time.  Each day they're sent somewhere new to dig.  They're unsupervised in the field but told where, when, and how many ditches to dig.  Their workdays run from before dawn until after dusk.  They are employees under the economic realities test.

This employer, though, fails to record the workers' time.  It pays a day rate of $100 in cash, but otherwise makes no record of any individual worker's pay.

The workers realize they should be getting overtime so, armed with just their recollections about hours and wages, they sue in federal court.  They testify about working 5-6 days/week around 12-13 hours/day.  They estimate an average workweek of 70 hours.

According to Appellee, these workers can never win.  If all they have are recollections about when they worked and for how long, Appellee says their testimony is "unsubstantiated" and therefore useless.  Put differently, Appellee says the better employers are at *not* making records of any kind, the harder it is for workers to win.

Appellee's argument disregards *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946), not to mention sixty-plus years of subsequent binding precedent.  This Court's longstanding rule is that workers can shift the burden to the employer

1

with just a 'running total' of uncompensated hours in their heads, even if only a "rough computation[] of [the worker's] subconscious mind." *Reeves v. Int'l Telephone & Telegraph Corp.,* 616 F.2d 1342, 1351 (5th Cir. 1980), *cert. denied,* 449 U.S. 1077 (1981). Appellee obviously doesn't like the precedents, but they exist and are binding.

Appellants satisfied their lenient burden to show they worked overtime without compensation and, by just and reasonable inference, how much overtime they worked. They did so with their testimony, Appellee's admissions, and other inferences pulled from the record. The trial court erroneously failed to shift the burden to Appellee, and Appellee in turn failed to disprove the reasonableness of Appellants' estimates. The Court should reverse and render for Appellants.

<u>**ARGUMENT**</u>

**A.** **Workers' Recollections, Standing Alone, Are Enough to Create a "Just and Reasonable Inference" of Overtime Hours Worked.**

**1.** **A short recap of precedent.**

The Supreme Court long ago recognized the injustice in penalizing workers when their employer fails to track their time. *Mt. Clemens*, 328 U.S. at 688. It balanced this inequity via a two-step burden-shifting test. The employee bears the initial burden to: i) "prove[] that he has in fact performed work for which he was improperly compensated" and ii) "*produce[] sufficient evidence* to show the amount

2

and extent of that work as a matter of just and reasonable *inference*." *Id.* (emphasis added). Once he satisfies this "lenient standard", *U.S. Dep't of Labor v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436, 439 (5th Cir. 2021), *cert. denied*, 142 S.Ct. 1667 (2022), the burden shifts to the employer to prove the precise amount of work performed or adduce "evidence to negative the reasonableness of the *inference* to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 688.

Though FS Blinds wishes otherwise, decades of precedent establishes that employee testimony or recollections alone constitute "sufficient evidence" under *Mt. Clemens*. *Reeves,* 616 F.2d at 1351-52 (worker's testimony about his 'running total' of uncompensated work hours and average workweek of 74.5 hours sufficient, even though just a "rough computation[] of his subconscious mind."); *Mitchell v. Riley,* 296 F.2d 614, 616 (5th Cir. 1961) (testimony about wages per load, typical time to perform job duties sufficient to show hours worked as matter of just and reasonable inference); *O'Meara-Sterling v. Mitchell,* 299 F.2d 401, 404 (5th Cir. 1962) (burden met solely with testimonial evidence about hours and nature of work); *Donovan v. Hamm's Drive Inn,* 661 F.2d 316, 318 (5th Cir. 1981) (employee testimony about average hours worked sufficient); *Skipper v. Superior Dairies, Inc.,* 512 F.2d 409, 420 (5th Cir. 1975) (burden shifts upon worker's "*testimony* that the Act was violated.") (italics added); *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d

3

1317, 1331 (5th Cir. 1985) (*Mt. Clemens* prima facie case established by worker testimony about hours worked).

The standard is clear. Employee testimony alone constitutes "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. None of Appellee's references to nonprecedential authority changes that fact.

### 2.    *Kirk* and *Ihegword* are not precedent.

Appellee's Response relies heavily on *Kirk v. Invesco, Ltd.,* 700 F. App'x 334 (5th Cir. 2017), *cert. dism'd*, 138 S.Ct. 1164 (2018), and *Ihegword v. Harris Cnty. Hosp. Dist.,* 555 F. App'x 372 (5th Cir. 2014), two nonprecedential decisions of this Court. But unpublished opinions "do not establish any binding law for the circuit…." *Salazar v. Molina,* 37 F.4th 278, 286 (5th Cir. 2022). The precedential cases are discussed extensively in Appellants' Brief (pp. 20-25) and more briefly in § A(1), above. Nonetheless, Appellee doggedly insists that these two unpublished cases describe a new standard that, contrary to *Mt. Clemens* and decades of binding authority, now holds that worker testimony means nothing if it is "unsubstantiated".

Appellants' Brief (pp. 29-34) explains why reliance on these nonprecedential cases is misplaced, including this Court's clear rejection of the idea that some peoples' testimony counts less than others'. *Guzman v. Allstate Assurance Co.*, 18

4

F.4th 157, 161 (5th Cir. 2021) (noting that affidavits "may not be discounted just because they happen to be self-interested."). *Guzman*, which the Response fails to address, rejected the trial court's disregard of testimony from 'interested witnesses' not "supported by other facts in the record." *Id.* at 160. In other words, evidence is evidence and, contra Appellee's core argument, it need not be 'substantiated' to be probative. Appellee's 'substantiated' rule enjoys no basis in statutory text and contradicts both *Mt. Clemens* and decades of subsequent precedent.

Appellee does cite two published decisions, *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428 (5th Cir. 2005), and *Fairchild v. All Am. Check Cashing, Inc.,* 815 F.3d 959 (5th Cir. 2016), for its purported 'unsubstantiated' rule, but they neither establish nor stand for what Appellee contends. To be sure, the word "unsubstantiated" does appear in *Harvill*, but only as dicta describing Harvill's assertion that she was made to submit false timesheets. *Harvill*, 433 F.3d at 441. But submitting false timesheets, 'substantiated' or not, neither speaks to the hours Harvill worked nor implies she ever worked overtime. For that matter, the opinion later notes that Harvill "presented *no* evidence of the amount or the extent of hours she worked without compensation." *Id.* This is why she lost. The opinion's characterization of a discrete and unimportant piece of evidence as "unsubstantiated" cannot (and should not) be read as overruling decades of precedent and setting a new

5

rule that *Mt. Clemens* always demands substantiation.

*Fairchild* fares no better. First, it doesn't mention *Mt. Clemens*, probably because it isn't a *Mt. Clemens* case. The employer there used a timekeeping system; Fairchild used it to record her hours; and the employer paid her for all the overtime she reported. But Fairchild sued, demanding more, claiming the company had knowledge she was working other hours for which she wasn't paid. Following a bench trial the trial court ruled for the employer. And, using the post-trial deferential standard of review, this Court found the trial judge "did not clearly err in finding that Fairchild did not prove that she had in fact worked overtime during this period and had not been paid for it." *Fairchild*, 815 F.3d at 965. At best for Appellee, *Fairchild* cited the unpublished *Ihegword*, 555 Fed. App'x at 372, for the proposition that 'unsubstantiated assertions speculated from memory' cannot carry the day. Of course we know from an earlier decision, *Reeves*, 616 F.2d at 1341-52, that sworn testimony about a mental running total, even if just a "rough computation[] of [the worker's] subconscious mind" *is* enough.

These cases represent a feedback loop originating in dicta that did not and cannot have overruled the earlier precedents. After all, this is "a strict *stare decisis* court", meaning "one panel of this court cannot disregard, much less overrule, the decision of a prior panel." *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998).

6

This is "a well-settled … rule of orderliness…." *U.S. v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014). So how did we get here? First, *Harvill* called a single piece of non-material proof "unsubstantiated." Citing *Harvill,* the *Ihegword* trial court said "an unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference." *Ihegword v. Harris County Hosp. Dist.*, 929 F. Supp.2d 635, 668 (S.D. Tex. 2013). *Harvill* didn't say that, though. The later non-precedential affirmance then cited the trial court's language approvingly. *Ihegword*, 555 Fed. App'x at 375. *Kirk*, also non-precedential, then cited *Harvill* and the non-precedential *Ihegword* decision for the proposition that "an employee must provide more than mere 'unsubstantiated assertions'", something else *Harvill* didn't say. *Kirk,* 700 Fed. App'x at 337. And *Fairchild* then cited the unpublished *Ihegword* decision in support of its finding that the trial court did not clearly err.

These cases did not and could not overrule the precedential cases Appellants cite. Appellee's rule would set an impossible burden for workers, conflicting with decades of precedent. The Court should emphatically reject Appellee's argument.[1]

---

[1]Likewise, Appellee's string-cite of unpublished district court cases talking about "unsubstantiated assertions", Appellee's Brief, p. 25, demands no further analysis. The Court should also disregard *Garcia v. U Pull It Auto & Truck Salvage, Inc.*, 657 Fed. App'x 293 (5th Cir. 2016), another non-precedential case Appellee cites. At p. 23 of its brief, Appellee incorrectly

**B.     Appellants Showed by Just and Reasonable Inference That They Worked Overtime and Were Not Paid for It.**

**1.     Appellants met their *Mt. Clemens* burden via their testimony and other record evidence.**

Appellants' Brief describes in detail (at pp. 25-29) how their evidence meets the *Mt. Clemens* standard.  After misstating the standard and mischaracterizing the record, Appellee says Appellants did not meet their burden.  Whether the standard requires substantiation or not, it remains that Appellants met their burden.

Appellee calls Appellants' declarations unsubstantiated and, thus, insufficient to show hours worked by just and reasonable inference.  In reality, ample record evidence supported their testimony.

For example, Appellants each testified about how early they typically arrived for work.  ROA.372; ROA.375; ROA.378.  FS Blinds, meanwhile, corroborated that the daily warehouse load-outs began as early as 5:30 a.m.  ROA.227; ROA.242.  Appellants described their typical workdays, the tasks they were required to do, and an estimate of how long each task would take.  ROA.1840-41; ROA.1925-26; ROA.1929-30.  Simpson confirmed Appellants did all these tasks.  ROA.233-34.

---

says *Garcia* "reiterated the rule set forth in *Harvill*", an odd assertion since *Garcia* doesn't mention *Harvill*.  Nor did *Garcia* have anything to do with Garcia's hours.  To the contrary, both sides "agree[d] that Garcia 'generally' worked fifty-one total hours per week and was always paid the same amount . . . for those fifty-one hours."  *Id.* at 294.  *Garcia* is entirely inapposite.

Appellants said they regularly worked overtime, which they said averaged 70 hours per week. The company's own representative admitted it took upwards of 50 hours per week (i.e., 10 hours of overtime), but only to install blinds. ROA.232. Time for loading, driving, unloading, hauling blinds into houses, unboxing, and trash disposal were on top of that. ROA.232-34.

Appellants testified about which days they typically worked (Monday through Friday and sometimes Saturday), when their workdays typically began, and when those days ended. ROA.372; ROA.375; ROA.378. So did the workers in *Skipper,* 512 F.2d at 409, *Five Star Automatic Fire*, 987 F.3d at 436, and *Moran v. Al Basit LLC,* 788 F.3d 201, 205 (6ᵗʰ Cir. 2015) ("Plaintiff's testimony coherently describes his weekly work schedule, including typical daily start and end times which he used to estimate a standard work week of sixty-five to sixty-eight hours."). In all three cases such testimony sufficed.

Appellants went even further, pulling additional proof and inferences from Appellee's work orders and pay stubs. First, there are the "Work Week Summaries", where they summarized a week of work orders for each Appellant, demonstrating how much time each would have needed just to hang blinds and measure windows. ROA.1916-17; ROA.1996-97; ROA.2059-60. This compilation pulled numerous data points from dozens of pages of work orders and draw sheets. It summarized the

number of blinds hung and windows measured, then used testimony about the time required to perform each task to calculate how many hours and minutes those tasks required. The result showed that in each exemplary week each Appellant worked overtime just to hang blinds and measure windows; and then more overtime for the loading, unloading, driving, etc. These summaries further substantiated Appellants' assertions that they worked overtime without being paid for it.[2]

Appellee offered no controverting evidence about the Appellants' workdays, and nor could it since it first would need to know how much driving Appellants did. ROA.235-36. Even so, Appellants did what they could to piece together a one-week

---

[2]Appellee's Brief spends 3 ½ pages (pp. 30-33) objecting to these summaries of record evidence. Appellee did object below, but in a single paragraph containing *none* of the arguments it now makes. ROA.2083. Nor could its objections below reasonably be called "evidentiary," *id.*, let alone sufficient under FED. R. EVID. 103(a)(1)(B). These new objections are all waived by failure to assert them below. *U.S. v. Lewis*, 796 F.3d 543, 545 (5th Cir. 2015); *U.S. v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994), *cert. denied*, 514 U.S. 1084 (1995); *U.S. v. Ruffin*, 575 F.2d 346, 355 (2nd Cir. 1978).

As for the non-evidentiary complaint at Appellee's Brief, p. 32, that the summaries are meaningless because they analyzed just a single week, this is just another example of Appellee advocating for as many hurdles as possible. Precedent establishes that Appellants' testimony alone sufficed under *Mt. Clemens*, the first part of which required only proof that the employee "has in fact performed work for which he was improperly compensated". *Mt. Clemens*, 328 U.S. at 687. These distillations of record evidence establish the fact of uncompensated overtime work, leaving only the second question – whether they also produced sufficient evidence of the amount and extent by just and reasonable inference. The burden then shifts to the employer, and if it fails to meet its burden "the court may then award damages to the employee, *even though the result may be only approximate*…." *Id.* at 688 (emphasis added). The standard didn't require Appellants to analyze *any* weeks. Appellees' complaint that it doesn't count unless Appellants painstakingly analyzed *every* week should be rejected.

snapshot of their driving from a week's worth of FS Blinds' records.   These

documents showed the locations, volume, extent, and geographic distribution of

Appellants' assignments for those weeks.   Appellants then estimated driving time

using an online tool, which estimated 14 (Romero-Rodriguez), 17 (Villareal) and 21

(Flores) hours of driving.   Appellee objected below on grounds of authenticity and

hearsay, ROA.2084, yet has no response to the fact that federal courts regularly use

internet mapping tools to take judicial notice of distance, geography, and estimated

driving times.   *See* Appellant's Brief, p. 9 n.4.[3]

Again, Appellee demands perfection, but that is just not required.   *Marshall

v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 599 (5th Cir. 1979).   In contrast, all

*Mt. Clemens* requires (as to number of hours) is an "inferen[tial]" showing, *Mt.

Clemens*, 328 U.S. at 687, which Appellants' proof accomplished.   After all,

Appellee surely doesn't contend that it required no time for its workers to transport

blinds throughout the Houston area.   Moreover, the workers' inability to be

completely precise about driving time is a burden *Mt. Clemens* squarely places on

---

[3]As for the objection asserted below, this evidence was sufficient for purposes of responding to Appellee's motion for summary judgment because Rule 56(c)(2) doesn't require strict admissibility; only that the evidence can be presented in admissible form at trial.   The addresses are in evidence, and at trial the plaintiffs can testify about the time necessary to drive among them.   The trial court could also take judicial notice of the distances and driving times.

11

the employer, not the workers. *Five Star Automatic Fire*, 987 F.3d at 441 (*Mt. Clemens* created "a lenient standard rooted in the view that an employer shouldn't benefit from its failure to keep required payroll records, thereby making the best evidence of damages unavailable.").

What would be the result if Appellants were the hypothetical ditch-diggers described above, low-skilled laborers toiling all day wherever their employer sent them? Assume there were no work orders, no record of where they went to, and no corporate admission that a subset of duties required up to 50 hours per week. Per Appellee's argument, workers with nothing but recollections of what days they typically worked and how long they lasted must always lose. Even if they kept a running tally of unpaid hours somewhere in the recess of their subconscious minds, *Reeves,* 616 F.3d at 1351-52, Appellee still says they lose.

But *Mt. Clemens* penalizes employers who ignore their statutory duties. Employees need only present some evidence to establish how much they worked. It could be a running tally kept in their mind. It could also be simply their own bare testimony and recollections, as in the many cases Appellants' have cited where testimony alone sufficed. If the hypothetical, record-less ditch diggers need only speak to meet their *Mt. Clemens* burden, then how is there any reasonable argument that Appellants proof fails?

12

### 2. FS Blinds cynically says *averaging* 70 hours per week means 70 hours every single week.

Central to Appellee's argument and the trial court's error is Appellee's conflation of Appellants' *average* week with each individual week (for which Appellee made no records). This contention misrepresents the facts while confusing ultimate questions about damages (on which the employer bears the burden of proof) with the threshold question of whether the workers satisfied their lenient *Mt. Clemens* showing.

Appellee falsely asserts that "Appellants' unsubstantiated and conclusory declarations stating they worked 70 hours every week cannot satisfy" their burden." Appellee's Brief, p. 26. But Appellants **never** said they worked 70 hours each and every week, which Appellee knows. *It just isn't true.* Appellee made the same argument below, ROA.440, and the trial court bit. ROA.2147 ("Moreover, evidence of varying compensation from week to week makes a consistent 70-hour workweek impossible" and attributing to Appellants an "unwavering stance that they worked 70 hours per week even on weeks when doing so would be impossible...."). Again, Appellants did not say they worked a consistent 70-hour workweek and they did not

13

stake out an "unwavering stance" as stated by the trial court.[4]

Appellants said – and Appellee never presented any contrary evidence – that they *averaged* 70 hours, sometimes more and sometimes less. ROA.372; ROA.375; ROA.378. Their testimony includes all weeks, including those when they may have worked no overtime and those when they worked more than 70 hours. The Supreme Court expressly baked such approximated damages into the pie. *Mt. Clemens*, 328 U.S. at 688 ("If the employer fails to [meet its burden], the court may then award damages to the employee, even though the result may be only approximate…."). These approximations may mean that Appellants receive more overtime for shorter weeks, but they also deny Appellants more damages for the longer weeks. Appellants wish they could prove their actual hours with the precision of regularly-kept time records; but Appellee made that impossible. Appellee's demand for exacting levels of certainty before the burden shifts is no better than saying it should "benefit from its failure to keep required payroll records, thereby making the best evidence of damages unavailable." *Five Star Automatic Fire*, 987 F.3d at 440; see also, *Moran*, 788 F.3d at 205.

---

[4]Nor, for that matter, is there anything in the record suggesting anything about Appellants' varying compensation; as far as the trial court could tell, Appellants made less in some weeks because their assignments required more extensive unpaid driving.

Appellee essentially urges death penalty sanctions as a reward for raising any question at the *prima facie* stage about the *total* number of unpaid hours. But this is not how the *Mt. Clemens* test works. The question is whether the employee has shown he performed work without proper compensation and then produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable *inference*. Quibbling about that inference happens, if ever, after the burden shifts to the employer. Have Appellants shown that they worked overtime without compensation? Yes. Have they shown by just and reasonable inference that they averaged 70 hours per week? Under existing precedent – especially *Reeves*, 616 F.2d at 1342, and *Skipper,* 512 F.2d at 409 – they have. Appellee, which cannot benefit from confusion it has wrought, can certainly quibble about specific workweeks in service of its own burden of proof. But to hear Appellee tell it, these quarrels deny the workers any remedy at all without the burden of proof ever shifting.

### 3.     There are no "contradictions" in the record.

Appellee attacks what it labels "contradictions" between Appellants' declarations and their depositions, but no such contradictions exist. In each instance, Appellee simply mischaracterizes the record. Appellants discuss these assertions below.

First, Appellee observes that each Appellant testified *averaging* 70 hours per weeks but conceded there were some weeks when they worked fewer, and sometimes even less than 40 hours. These aren't contradictions because both statements can be true simultaneously. It's just math, i.e., how averages work.

Second, and relatedly, Appellee attacks Romero-Rodriguez's admission that there was one specific week when he worked just one day, making it "impossible" for him to have worked 70 hours that week. Again, this is *not* a contradiction; it is a single week out of the 7 months he worked for Appellee. On the other hand, each Appellant addressed the issue head-on in their declarations, saying that they were approximating that a typical workweek consisted of 70 hours of work but that "it would sometimes be less and sometimes be more." ROA.372; ROA.375; ROA.378. Weekly variations were part of their testimony.[5]

Appellee also says, citing ROA.472, ROA.594, and ROA.599-600, that Villareal and Romero-Rodriguez admitted having no way to substantiate or explain how they worked over 40 hours in any workweek. Appellee's Brief, p. 18-19. This

---

[5]Appellee also references one other week, for which it produced only three days of work orders. Appellee's Brief, p. 10; ROA.580-99. When asked about this week, though, Romero-Rodriguez was clear that he couldn't possibly say that he worked only three days because "I don't remember that week, and I don't know if it's missing, you know, some . . . charge sheet or . . . some of the papers." ROA.583.

also mischaracterizes the record.  Villareal, for example, explained at ROA.472 that he was providing his "best estimate, average in a workweek", because "FS Blinds never kept any kind of records of [his] time worked."  The misrepresentation about ROA.594 is even starker.  There, Romero-Rodriguez did not make the admission Appellee claims.  Rather, he said that for a single, discrete, identified week he could not explain how he worked more than 40 hours.  So, too, at ROA.599-600, where Romero-Rodriguez testified that he was hampered by not having "any timesheet or something that I can track", that at the time he could not remember how many hours he worked that week, but he was providing his best average.  Remember – the burden of creating time records is on the employer, not the worker.  This is yet another example of Appellee taking advantage of its own failure to keep time records.

At Appellee's Brief, p. 19, Appellee calls Appellants' declarations conclusory, even though they aren't.  Appellants did not nakedly assert that they averaged 70 hours per week without any further detail.  Instead, they said when their days started, when their days ended, that they worked each day without significant break, and also what days they typically worked.  Evidence exactly like this led the Court in *Skipper,* 512 F.2d at 417, to infer a typical week of 61.5 hours.  It is likewise sufficient here.

Appellee labels these items contradictions, the better to sow doubt with the

17

Court.  Appellants urge the Court not to be misled.

### C.  FS Blinds Failed to Disprove Appellants' Testimony That They *Averaged* Seventy Hours Per Week.

Appellants satisfied their lenient *Mt. Clemens* burden.  This means the burden then shifted to Appellee to either prove the precise hours worked in each workweek (which it admitted it couldn't do) or produce evidence that the employees' estimate was unreasonable.  *Id.*  The burden here, is to "'disprove' the employee's testimony…." *Skipper*, 512 F.2d at 420.

Appellee didn't do this, though.  First, it made and makes no argument that it proved Appellants' actual hours.  And nor could it since the company admitted having no position about the hours Appellants worked in any particular workweek. ROA.230; ROA.237.

And nor has it produced any evidence that the workers' estimated hours were unreasonable.  On this point, we begin with the baseline of Appellee's admission that just hanging blinds required upwards of 50 hours per week.  Add to that load-out time at the warehouse; driving all over, including to far-flung areas like Navasota; hauling blinds into houses; unboxing them; doing measurements; then hauling away trash.  To get from 50 to 70 hours, including the substantial driving, is not much of an inferential leap.

All Appellee really argues – all it really can say – is that it has identified a

week or two when Appellants might have worked fewer than 70 hours, or perhaps no overtime at all. But this misses the mark for two reasons. First, approximated damages are the hallmark of a *Mt. Clemens* case. Second, the fact of a few shorter weeks implies nothing about the *average* week absent proof about the other weeks' hours. Appellee offered no such evidence.

Second, as this Court explained in *Marshall*, 590 F.2d at 598, even an error in calculations doesn't bar the worker from any recovery at all. The Department of Labor there had calculated damages using "the reconstruction method." Cross-examination revealed that some of its calculations were inaccurate. The trial court then dismissed, finding no competent evidence of damages. Citing *Mt. Clemens*, this Court reversed, finding that "[a]lthough the evidence was not perfectly accurate, it provided a sufficient basis to calculate the number of hours worked by each employee." *Id.* at 599. In other words, even minor errors in estimation do not derail the worker's case, particularly when "the inaccuracy was due to the defendants' failure to keep more adequate records." *Id.*

Appellants' estimate "may only be approximate," *Mt. Clemens*, 328 U.S. at 688, but that is the playing field Appellee created. Even if Appellants' estimate is "not perfectly accurate, it [still] provide[s] a sufficient basis to calculate the number of hours worked by each employee." *Marshall*, 590 F.2d at 599. Appellee failed to

19

negative the reasonableness of Appellants' testimony.  *Mt. Clemens*, 328 U.S. at 688.

It did not contradict their testimony about when their days started, when they

finished, or what days they typically worked, or that they took non-compensable

breaks.  The Court should reverse and render for Appellants in the amounts described

at pp. 36-37 of their principal brief.

### D.     Appellants Were Employees Under the Controlling Economic Realities Test.

Appellants now turn to the economic realities test, primarily standing on their

earlier brief, which comprehensively addressed the issue.  Nothing Appellee says in

response truly creates a triable issue of material fact whether these integral, low-

skilled workers were employees.  Below, Appellants will address some of the new

and irrelevant arguments raised in Appellee's Response.  Ultimately, this Court

should reverse and render for the workers on all issues, including that this record

unquestionably establishes that Appellants were employees.  That said, the best case

scenario for Appellee is affirming the trial court's finding that there is a fact question.

There is no reasonable argument on this record that Appellants were contractors as

a matter of law.

### 1.     Integral workers are ordinarily employees.

The more integral a worker's services are to the business, the more likely it is

that the parties have an employer-employee relationship.  *Hobbs v. Petroplex Pipe*

*and Constr., Inc.,* 946 F.3d 824, 836 (5th Cir. 2020), citing *Acosta v. Off Duty Police Servs. Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019).  It is undisputed on this record that Appellants were integral to Appellee's business.  Without them, its president concedes, the business would grind to a halt.  ROA.342.

Appellee feigns that this Court hasn't recognized this factor as relevant to the economic realities test.  Appellant's Brief, pp. 51-52.  It also says the Third and Sixth Circuit cases cited by Appellants "have no bearing on this case", *id.,* ignoring the fact that *Hobbs* approvingly quoted one of them, *Acosta*, and cited a Tenth Circuit case for the same point.  *Hobbs*, 946 F.3d at 836.  As *Hobbs* notes, this factor has been recognized by numerous circuit courts.[6]  Though it may have been neutral as applied in *Hobbs*, it is not neutral here.  Without installers, FS Blinds would have no business.  This factor points strongly toward employee status.

### 2.    Control.

Appellee passes the buck to its customers, claiming they, not FS Blinds,

---

[6]Prior briefing establishes that the Third, Fifth, Sixth, and Tenth Circuits have done so.  As far as Appellants can tell, nearly every other circuit has, as well.  *Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668, 675 (1st Cir. 1998); *Brock v. Superior Care,* 840 F.2d 1054, 1059 (2nd Cir. 1988); *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006); *Secretary of Labor v. Lauritzen,* 835 F.2d 1529, 1535 (7th Cir. 1987), *cert. denied*, 488 U.S. 898 (1988); *Walsh v. Alpha & Omega USA, Inc.*, ___ F.4[th] ___, 2022 WL 2719984, *2 (8th Cir., July 14, 2022); *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979); *Scantland v. Jeffry Knight, Inc.*, 721 F.2d 1308, 1312 (11th Cir. 2013).

decided whether the installer's work was sufficient. The record shows this isn't true. First, the so-called subcontractor agreements reserved to FS Blinds "the right to inspect Subcontractor's work for progress towards completion of the Services." ROA.386. Second, Appellee points to no evidence that Appellants had any real interaction with customers, at least not the homebuilders who made up most of the business. Third, Calagna admitted that Appellee retained ultimate and exclusive authority over whether to require installers to fix or repair work that *it* deemed to be substandard, or else incur a chargeback. ROA.356-7. Simpson said Beinlich and/or Whitford had this authority. ROA.225. As the ultimate arbiter over whether the work had been done correctly, FS Blinds enjoyed complete control over the methods, details, and means of performing the installations.

Appellee lightly argues that Appellants worked without supervision or oversight, Appellee's Brief, p. 40, yet entirely ignores *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1312 (5th Cir.) ("lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence."), *cert. denied*, 429 U.S. 826 (1976). Appellants' Brief cited *Usery* seven times; Appellee doesn't even mention it.

Citing a single non-precedential case, FS Blinds says installers occasionally hiring helpers shows both economic independence and control. Appellee's Brief, p.

22

44.  But "the courts have had little difficulty in finding employment status though the employee could hire others within his own discretion." *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 301 (5th Cir. 1975) (citing cases).  Indeed, the "[o]ccasional exercise of the right to hire helpers also has not been found sufficiently indicative of independence to allow a finding of nonemployee status." *Usery*, 527 F.2d at 1312.

Appellees' argument about helpers also represents extreme cherry-picking from the record.  Villareal only "rarely" used helpers, and when he did it was only to have them unload blinds for him.  ROA.473-5.  Flores, meanwhile, testified that he used one or two people as helpers at various times.  ROA.660.  But Appellee fails to mention his accompanying testimony – which it put in the record – that Flores only did this *when Appellee told him to*.  ROA.659.  This happened because, apropos of Appellee's control over assignments, it would sometimes give Flores a huge slate of work and then instruct him to get some help: "Usually they will call me a day before then say, 'Tomorrow you got 100 and something blinds, 150 blinds.  You've got to have a helper.'"  ROA.660.  Finally, Appellee presents no evidence that Romero-Rodriguez ever used a helper.  But he did confirm that Appellee would sometime ask the installers to get helpers.  ROA.1830.

### 3.     Appellants could not increase profits by working faster.

Appellee says installers could increase their profits by working faster.  This is simply untrue.  ROA.278 (Whitford confirming "there isn't really any surplus work for an installer to pick up if, for example, he works really fast or gets done with his list quickly").  Appellee hands out all the tasks and then there's nothing more an installer might do by finishing quickly.  *Id.*  In short, Appellee decided how much work each installer received every day.  ROA.249; ROA.279-80; ROA.255.

Appellee relies heavily on the non-precedential *Eberline v. Media Net, L.L.C.,* 636 F. App'x 225 (5th Cir. 2016), particularly as to the related questions of profit/loss and showing initiative.  Appellee's Brief, pp. 48-49.  Even if precedential, *Eberline* would not be especially helpful.  After all, the jury had determined Eberline was *not* an employee.  *Eberline,* 636 Fed. App'x. at 226.  Thus, this Court's review and analysis were conducted with utmost deference to the verdict.  *Id.*  Second, *Eberline*'s facts are fundamentally different in numerous ways.  The company's installers there could and did do custom work at the customers' request.  There is no evidence here that Appellants had any material interaction with customers.  Likewise *Eberline* speaks to the workers exhibiting "some unique skill set or some ability to exercise significant initiative within the business."  *Id* at 228-29.  Appellants here at best performed incredibly low-skill work.  Finally, and as noted above, the record here

unequivocally established that each days' tasks were finite; there was no more available work for those who finished quickly.

### 4. Purchasing a few blinds for friends and family did not make Flores an independent contractor.

Appellee notes that Flores purchased $4,604 in blinds to install for non-FS Blinds customers. Appellee's Brief, p. 46. This is a red-herring. The record supports that Flores, on occasion, bought blinds for friends and family and did not charge them for installations, save perhaps the blinds' cost. ROA.1840. This did not make him an independent contractor and should be ignored.

### 5. Taxes.

Appellee makes hay with how Appellants filed their taxes. Notably missing from their brief is even a single case calling this relevant to the economic realities test. This is because it isn't. *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 667 (5th Cir. 1983) (that workers "listed themselves as self-employed on their tax returns" deemed irrelevant to economic realities test); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 388 (5th Cir. 2019) (how plaintiffs file tax returns has limited relevance in the economic-reality test."). This all stems from the unassailable proposition that even the worker's subjective opinion that he is a businessman has no relevance to his FLSA status. *Robicheaux,* 697 F.2d at 667; *Usery*, 527 F.2d at 1314; *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 346 (5th Cir.

2008), *cert. denied*, 556 U.S. 1129 (2009); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947).

Relatedly, Appellee argues that Appellants' tax deductions – primarily for mileage and tolls – are significant. They are, but not in a manner benefitting Appellee. First, the sheer amount of deducted mileage and tolls underscores how much uncompensated driving Appellants were doing. Second, these workers should never have incurred a penny of travel costs. 29 C.F.R. § 531.35 (anti-kickback rule barring employers from cutting into wages by requiring workers to provide tool of the trade to perform the work); *see also Burton v. DRAS Partners, LLC*, 2019 WL 5550579 (N.D. Ill. Oct. 27, 2019) (FLSA requires delivery driver's vehicle expenses be fully reimbursed by the employer, lest it trigger a wage and hour violation). In other words, Appellants' expenses were so high because Appellee improperly shifted its costs to its installers and then failed to reimburse them as required by law.

### 6.    Project Work.

Appellee says that because it gave its regular, full-time workers new assignments each day, they were working on a project basis, pointing to contractor status. When a company maintains a stable of workers to do its work as needed, that is employment, not project work. *Hobbs*, 946 F.3d at 834-35. By contrast, project work occurs where the workers move from job to job and company to

company, *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993), or work in short stints followed by "significant breaks between projects, ranging from one to nine months." *Gate Guard Services L.P. v. Solis*, 2013 WL 593418, *10 (S.D. Tex., Feb. 13, 2013). It refers to an "on-again-off-again relationship". *Cromwell v. Driftwood Elec. Contractors, Inc.*, 348 Fed. App'x 57, 60 (5th Cir. 2009). Sending its installers to new addresses each day is not project-by-project work.

## 7. Investments.

Finally, Appellee contends that the "extent of the relative investments of the worker and the alleged employer" factor weighs in its favor. Appellee's Brief, pp. 44-48. This argument underscores how far Appellee will go to mischaracterize the record.

For the investment element, courts "compare each worker's *individual* investment to that of the alleged employer." *Hopkins*, 545 F.3d at 344 (emphasis supplied). The alleged employer's investment includes things like maintaining corporate offices; marketing and sales efforts; back-office accounting and payroll services; office equipment; insurance; and developing the company's products. *Id.*; *Herman v. Express Sixty-Minutes Delivery Service,* 161 F.3d 299, 304 (5th Cir. 1998); *Usery*, 527 F.2d at 1314.

Appellee admits that it has "a lot more" invested in infrastructure, overhead,

27

and capital expenses than its installers. ROA.350.   Sealed Docket Entry No. 40 reveals Appellee's substantial investments in assets, inventory, and facilities far exceeding anything any individual Appellant might have "invested."   This factor points to employee status.

### CONCLUSION AND PRAYER

FS Blinds has purposefully structured its relationship with its most critical workers in a bid to avoid FLSA liability, and now tenaciously argues that it should benefit from its deliberate decision to misclassify workers and not maintain statutorily-required records.   The record here overwhelmingly establishes that Appellants were employees, not contractors.   Appellants met their *Mt. Clemens* burden to show that they worked hours without proper compensation, and presented sufficient evidence raising a just and reasonable inference that they each averaged 70 hours of work per week.   Appellee then failed to prove their actual hours or to otherwise show that the employees' estimates of 70 hours/week were wrong.   This Court should therefore reverse and render and then remand for an award of reasonable and necessary fees and taxable costs.

Respectfully submitted,

Dow Golub Remels & Gilbreath, PLLC

By:  /s/ Andrew S. Golub
Andrew S. Golub
Texas Bar No. 08114950
asgolub@dowgolub.com
Lauren Van Ness
Texas Bar No. 24105723
lvanness@dowgolub.com
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056
Telephone: (713) 526-3700
Facsimile: (713) 526-3750

**ATTORNEYS FOR APPELLANTS**

**Certificate of Service**

I certify that on August 1, 2022, I served the counsel listed below via the Court's electronic filing system:

Mr. Stephen H. Lee
Ms. Kelly R. Ferrell
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

s/ Andrew S. Golub
Andrew S. Golub

29

## CERTIFICATE OF COMPLIANCE

Under Fifth Circuit Rule 32.3, I certify that this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) because:

1.    Excluding the parts of the brief listed in FED. R. APP. P. 32(a)(7)(B)(iii), the brief contains 6,494 words;

2.    The brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface (14 point Times New Roman font, 12 point for footnotes) using Microsoft Word Version 2204;

3.    If the Court so requests, the undersigned will provide an electronic version of the brief and/or a copy of the word or line printout; and

4.    The undersigned understands that a material misrepresentation in this certificate may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

                    s/ *Andrew S. Golub*
                    Andrew S. Golub